**FIRST NATIONAL BANK IN GRAHAM and Guy Meacham, Petitioners,**

v.

**Emmett SLEDGE, B.J. Brown, Bob Brown, Ed C. Davis and Don McCluskey, Respondents.**

No. C–536.

Supreme Court of Texas.

June 22, 1983.

Rehearing Denied July 20, 1983.

Elton M. Montgomery, Graham, for petitioners.

Louis Dayne Miller, Graham, for respondents.

CAMPBELL, Justice.

This is a mechanic's and materialman's statutory lien case. The First National Bank in Graham sued the owner, Guy Meacham, and five subcontractors to remove a cloud from title to land caused by lien affidavits filed by the subcontractors. Alternatively, the Bank sought declaratory judgment that the mechanic's and materialman's contract lien which it holds is superior to the statutory liens of the subcontractors. The subcontractors counterclaimed against the Bank for foreclosure of their mechanic's and materialman's liens and cross-claimed against Meacham for attorney's fees. The trial court rendered judgment for the subcontractors on both claims. The court of civil appeals affirmed the trial court judgment. 616 S.W.2d 954. We reform the judgments of the courts below with respect to the subcontractors' lien claims and, as reformed, affirm. We reverse the judgments of the courts below with respect to attorney's fees and render

judgment that the subcontractors take nothing on their cross-claim.

Meacham, the owner of two lots in Graham, Texas, contracted with Harris, a general contractor, to build a house on each lot. The contract price was $23,383 per house. Meacham and Harris executed a mechanic's lien contract for each lot and Meacham gave Harris a mechanic's lien note for each contract. Harris assigned the mechanic's lien contracts and notes to the First National Bank as collateral for interim construction money advanced to Harris. Harris completed one house, but took bankruptcy before completing the other. The subcontractors, unpaid, filed lien affidavits in the Young County lien records. The subcontractors then mailed a copy of each lien affidavit to Meacham.

Our first question is whether the subcontractors have perfected statutory liens under the Hardeman Act.[1] Because a subcontractor is a derivative claimant and, unlike a general contractor, has no constitutional, common law, or contractual lien on the property of the owner, a subcontractor's lien rights are totally dependent on compliance with the statutes authorizing the lien. *Da-Col Paint Manufacturing Co. v. American Indemnity Co.*, 517 S.W.2d 270 (Tex. 1974). However, substantial compliance with the statutes is sufficient to perfect a lien under the Act. *Conn, Sherrod & Co. v. Tri-Electric Supply Co.*, 535 S.W.2d 31 (Tex. Civ.App.—Tyler 1976, writ ref'd n.r.e.).

We have set out the applicable statutes in the margin.[2] These statutes are very lengthy, have been subjected to several re-

1. Tex.Rev.Civ.Stat.Ann. arts. 5452–5472e. The Hardeman Act codified and revised the law applicable to mechanic's and materialman's liens.

2. All statutory references are to the Texas Revised Civil Statutes. Article 5452 provides:

"Any ... subcontractor who may labor, specially fabricate material, or furnish labor or material: (a) for the construction or repair of any house, building or improvement whatever ... within this state under or by virtue of a contract with the owner ...; upon complying with the provisions of this Chapter shall have a lien on such house, building [or] improvements ... and shall have a lien on the lot or lots of land necessarily connected therewith, ... to secure payment: (a) for the labor done or material furnished or both for such construction or repair...."

Article 5453 provides:

1. Every ... subcontractor who may be entitled to a lien under this Act, not later than ninety (90) days, after the indebtedness accrues ..., shall file his affidavit claiming a lien, ... in the office of the county clerk of the county in which such property is located, ... and he shall send to the owner by certified or registered mail ..., two (2) copies of such affidavit claiming a lien.

. . . .

2. If the claimant for such lien is other than an original contractor, such claim shall not be valid or enforceable unless the claimant shall also have complied with the applicable notice requirements hereafter set forth which shall be conditions precedent to the validity of such claims:

. . . .

b. ... [T]he claimant shall give the applicable notice or notices described, as follows:

(1) Where the claim consists of a lien claim arising from a debt incurred by a subcontractor, ... claimant shall give a like notice to owner not later than ninety (90) days after the tenth (10th) day of the month next following each month in which the claimant's labor was done or performed in whole or in part or his material delivered in whole or in part.

(2) ... Such notices shall be sent by certified or registered mail.... A copy of the statement or billing in the usual and customary form shall suffice as a notice under this subparagraph; provided, however, if such statement or billing is to be effective to authorize an owner to retain funds for the payment of such claim as provided in Article 5463 of this Act, it shall contain or be accompanied by some form of statement to an owner to the effect that if the bill remains unpaid he may be personally liable and his property subjected to a lien unless he withholds payments from the contractor for the payment of such statement or unless the bill is otherwise paid or settled....

Article 5463 provides:

1. When notices of claims sent under the provisions of paragraph 2 of Article 5453 of this Act are received by the owner, he shall be authorized to retain in his hands the amount or amounts of money necessary to pay said claims from payments or part-payments to the original contractor for labor, or material or both, or for specially fabricated materials which has been performed or furnished by a claimant and to which such notices are applicable, at time and under circumstances, as follows:

. . . .

visions, and are not exactly a model of clarity.

The Act provides two methods by which a subcontractor can perfect a lien on the owner's property. Article 5463 is a "trapping" statute. It provides the subcontractors can trap, in the owner's hands, funds payable to the general contractor if the owner receives notice from the subcontractors that they are not being paid. If the owner pays any money to the general contractor after receiving notice from the subcontractors, the owner's property will be subject to a lien to the extent of the money paid. Article 5469, often referred to as the "retainage" statute, is a duty statute. It provides that it shall be the duty of the owner to retain 10% of the contract price owing to the general contractor, and that the fund be retained in the owner's hands for 30 days after the work is completed. This duty is imposed on the owner with or without notice of a claim. If the owner fails in this duty to retain, then the owner may be liable and his property subject to a lien, at least to the extent of 10%, to secure payment of the subcontractor's claims. The amount trapped under article 5463 may exceed the 10% required to be retained by article 5469.

To determine whether the subcontractors have valid liens, we must compare the steps the subcontractors took to perfect their liens with the statutory requirements. The subcontractors last furnished labor or material in October 1973. By November 1, 1973, they had filed their lien affidavits in the mechanic's and materialman's lien records of Young County. The form of each of the lien affidavits is essentially the same. Each affidavit claimed a lien for "labor performed and materials furnished," and each contained a numbered paragraph 1 giving the "items of the claim" as in the following example:

| AMOUNT CLAIMED | ITEM OF THE CLAIM | DATE OF PERFORMANCE |
|---|---|---|
| $465.00 | Labor and Materials | October 26, 1972 |

Total of such amount claimed $465.00. A copy of invoice is attached hereto and marked "Exhibit A", and made a part hereof as though copied in full.

The only notices sent to Meacham within the statutory time limit consisted of one

b. Under notices of claims sent under subparagraph 2–b of Article 5453, immediately upon receipt of such notices.
. . . .
2. . . . The owner shall in no case be required to pay, nor his property be liable for, any money, other than that required to be retained by him under the provisions of Article 5469 hereof, that he may have paid to the contractor before he is authorized under this Article to retain the money. If the notices prescribed in Article 5453 have been received by the owner and claimant's lien has been secured in accordance with Article 5453 and the claim or any part thereof is reduced to final judgment, the owner shall be required to pay, and his property shall be liable for, any money that he may have paid to the contractor after he is authorized to retain such money by virtue of this Article, as well as any money he is required to retain by the provisions of Article 5469 hereof.
Whenever work is done whereby a lien or liens may be claimed under Article 5452 hereof, it shall be the duty of the owner . . . to retain in his hands during the progress of such work and for thirty (30) days after the work is completed, to secure the payment of artisans and mechanics who perform labor or service, and to secure the payment of any other claimants furnishing material, or material and labor, or specially fabricated material for any contractor, . . . ten percent (10%) of the contract price to the owner, . . . or ten percent (10%) of the value of same, measured by the proportion that the work done bears to the work to be done, using the contract price or, if none, the reasonable value of the completed work as a basis of computing value. All persons who shall send notices in the time and manner required by this Act and shall file affidavits claiming a lien not later than thirty (30) days after the work is completed, shall have a lien upon the fund so retained by the owner . . .; with preference to artisans and mechanics, who shall share ratably therein to the extent of their claims; with any remaining balance to be shared ratably among all other participating claimants. If the owner . . . refuses or fails to comply with the provisions of this Article, then all claimants complying with the provisions of this Act shall share ratably among themselves, with preference to artisans and mechanics as above specified, liens at least to the extent of the aforesaid fund of ten percent (10%) which should have been retained, as against the house, building, structure, fixture, or improvement and all of its properties, and on the lot or lots of land necessarily connected therewith, to secure the payment of such liens.

copy of each subcontractor's lien affidavit without the invoice copies attached. These notices did not contain the statutory warning that unless Meacham paid the claim or it was otherwise settled he might be held personally liable and his property subjected to a lien.

■ We hold the subcontractors have not perfected a lien under article 5463. Article 5463, paragraph 1 provides:

When notices of claims sent under the provisions of paragraph 2 of Article 5453 of this Act are received by the owner, he shall be authorized to retain in his hands the amount or amounts of money necessary to pay said claims from payments or part-payments to the original contractor. . . .

What are the notice requirements of paragraph 2 of article 5453? It provides, if the lien claimant is a subcontractor, the claim

shall not be valid or enforceable unless the claimant shall also have complied with the applicable notice requirements hereafter set forth which shall be conditions precedent to the validity of such claims[.]

The notice requirement "hereafter set forth" is paragraph 2b(2) of article 5453, which provides in part:

A copy of the statement or billing in the usual and customary manner shall suffice as a notice under this subparagraph; provided, however, if such statement or billing is to be effective to authorize an owner to retain funds for the payment of such claim as provided in Article 5463 of this Act, it shall contain or be accompanied by some form of statement to an owner to the effect that if the bill remains unpaid he may be personally liable and his property subjected to a lien unless he withholds payments from the contractor for the payment of such statement or unless the bill is otherwise paid or settled.

The statutory warning is a condition precedent; without it no lien can be imposed under article 5463. *See Trinity Universal Insurance Co. v. Palmer,* 412 S.W.2d 691 (Tex.Civ.App.—San Antonio 1967, writ

ref'd n.r.e.). Therefore, it is unnecessary for us to decide if the notice was sufficient without the supporting invoices attached and without the second copy as required by the statute. We note it is immaterial in this instance that the notice was not sent by registered or certified mail. It is undisputed that written notice was received. Article 5456 provides that if notice is actually received, the method of delivery is immaterial.

■ We must next determine if the subcontractors have perfected a lien under article 5469. Again the question hinges on the notice requirements to perfect the lien. The notice requirements of article 5469 are not the same as the requirements of article 5463. Because 5469 fixes a duty on the owner to retain 10% of the contract price regardless of notice of the claim, there is no requirement that the statutory warning be given to perfect a lien under article 5469. The notice requirement of this article is that notice must be given "in the time and manner required by this Act." This requirement is found in article 5453, subparagraph 2b(2):

Where the claim consists of a lien claim arising from a debt incurred by the original contractor . . . notice to the owner, as prescribed in paragraph 2b(1) of this Article, will be sufficient.

Subparagraph 2b(1) provides the claimant shall give written notice of the unpaid balance to the owner not later than 90 days after the tenth day of the month next following each month in which the claimant's work was performed. We hold the copy of the lien affidavit timely received by the owner satisfied this requirement.

■ Meacham argues the liens were not perfected because each subcontractor only sent him one copy of the affidavit. Article 5453, subd. 1, provides the lien claimant "shall send to the owner . . . two (2) copies of such affidavit claiming a lien." The only apparent purpose for requiring two copies of the lien affidavit be sent to the owner is so the owner can notify the general contractor that a lien is claimed for a particular

unpaid claim. Because the general contractor here was in bankruptcy, we see no harm in failing to provide the owner an extra copy. The mechanic's and materialman's lien statutes must be liberally construed for the purpose of protecting laborers and materialmen. *First National Bank in Dallas v. Whirlpool Corp.,* 517 S.W.2d 262 (Tex.1974).

The parties stipulated the value of the work completed was $36,383. The subcontractors, therefore, are entitled to a lien for $3,638.30.

■ We must now determine the inception and priority of the liens on Meacham's property. The bank and the subcontractors each seek a declaratory judgment that their liens are superior. The bank acquired its lien when the general contractor assigned the construction contracts and promissory notes to the bank in return for interim financing. Therefore, the bank holds the same position of priority as the general contractor. The date of the inception of the bank's lien is the date the general contractor's mechanic's and materialman's lien contracts were recorded in the lien records of the county. Tex.Rev.Civ.Stat.Ann. art. 5459 § 2(b). The subcontractors' liens are also effective as of that date because they furnished materials or labor to the general contractor in connection with the construction contracts. *Oriental Hotel Co. v. Griffiths,* 88 Tex. 574, 33 S.W. 652 (1895); Tex. Rev.Civ.Stat.Ann. art. 5468.

■ Although the bank's lien and the subcontractor's liens have the same time of inception, we hold article 5469 gives the subcontractor's liens preference over the bank's lien to the extent of the $3,638.30 which should have been retained. Article 5469 was enacted to protect mechanics, artisans and materialmen by providing a single, protective fund to satisfy their unpaid claims. *Hayek v. Western Steel Co.,* 478 S.W.2d 786 (Tex.1972). The fund is created by withholding money due the general contractor and is needed only if the general contractor defaults in his obligation to the subcontractors. The legislature could not have intended that the general contractor share in this fund. The lien created by

article 5469 applies only to "third party claimants," that is, laborers or materialmen with no contractual relationship to the owner. *See Hayek v. Western Steel Co.,* 478 S.W.2d at 794.

■ The last question before us is whether the subcontractors were entitled to attorney's fees under article 2226. We hold they are not. Article 2226 requires a contractual relationship between the persons supplying the labor or materials and the person against whom the claim is asserted. *New Amsterdam Casualty Co. v. Texas Industries, Inc.,* 414 S.W.2d 914, 915 (Tex.1967). The subcontractors had no contractual relationship with Meacham; they contracted to perform services or supply materials for the general contractor. Therefore, the court of appeals erred in awarding the subcontractors attorney's fees from Meacham.

The judgments of the courts below that the subcontractors recover $6,484.21 from Guy Meacham are reformed to $3,638.30 plus interest at 6% per annum from November 1, 1973, to March 8, 1977, and are affirmed as reformed. The judgments that the subcontractors recover attorney's fees from Guy Meacham are reversed and judgment rendered that the subcontractors take nothing on their cross-claim for attorney's fees.

In all other respects, the judgments of the courts below are affirmed.