The FIRST NATIONAL BANK OF CLAUDE, Appellant,

v.

CHAPARRAL ELECTRIC SUPPLY CORPORATION, et al., Appellees.

No. 07–86–0198–CV.

Court of Appeals of Texas, Amarillo.

March 26, 1987.

354

Lumpkin, Barras, Reavis & Bunkley, Richard L. Hanna, Amarillo, for appellant.

Cornett & Bradley, David Bradley, Gibson, Ochsner & Adkins, David L. LeBas, Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

This appeal presents the question whether, as decreed by the trial court, a claimant to a statutory mechanic's and materialmen's lien is entitled to full payment of its claim from funds withheld by the owner. Finding that the claimant did not meet a condition precedent for full payment from the funds, we will reform the trial court's judgment and, as reformed, affirm.

Beginning 26 September 1983 and continuing through 22 February 1985, Robert Graves [1] executed seven promissory notes, each bearing interest and payable to the order of The First National Bank of Claude on specified dates. Payments of the notes were secured by contemporaneously executed security interests in Graves' accounts receivable. A financing statement to perfect a lien on Graves' "inventory & receivables" was filed on 31 July 1980. The notes, having a combined principal balance of

1. Graves operated businesses under the names of Graves & Son, Graves & Son Trucking, and Graves Electric.

$70,353.98, were not paid when they became due.

Between August and December of 1984, Graves, d/b/a either Graves & Son or Graves & Son Trucking, was under contract with Iowa Beef Processors, Inc. to do the electrical wiring for three new presses installed by Iowa Beef. To perform the contract, Graves ordered parts and supplies from Chaparral Electric Supply Corporation. Chaparral supplied the materials in August and September of 1984.

On 5 November 1984, Graves, owed $25,-785.27 by Iowa Beef under their contract, filed for bankruptcy. However, neither Graves nor the bankruptcy trustee, so the trial court found, made a claim to the $25,-785.27 Iowa Beef owed Graves.[2]

By its 14 November 1984 letter, Chaparral, notifying Iowa Beef that it had not been paid by Graves, advised Iowa Beef that pursuant to their conversation the day before, Chaparral agreed to abate the filing of its mechanic's lien, and enclosed invoices totaling $11,893.38 with the request for the retainage of sums due it. Thereafter, on 6 December 1984, Graves finished his contract with Iowa Beef. Not having been paid, Chaparral filed its mechanic's and materialmen's lien on 31 December 1984, and sent a copy of its lien affidavit to Iowa Beef and to Graves.[3]

Chaparral instituted the action underlying this appeal to recover from Iowa Beef the sum of $14,282.10 owed it by Graves, and to foreclose its mechanic's and materialmen's lien, which was alleged to be a first and superior lien on Iowa Beef's premises. The First National Bank of Claude intervened, seeking to recover from Iowa Beef the entire $25,785.27 owed to Graves to apply on Graves' indebtedness to the bank on the theory that its security interest is a first lien on the receivable due Graves.

After having answered Chaparral's action, Iowa Beef filed an interpleader, alleging it was unable to decide to whom payment of the funds it held should be made. Iowa Beef tendered the $25,785.27 into the registry of the court, requesting to be released and discharged from all liability, to have the mechanic's and materialmen's lien against its property removed, and to recover a reasonable attorney's fee.

Hearing the evidence, the court rendered judgment, decreeing that from the funds on deposit in the registry of the court: (1) Chaparral shall recover $11,825.73, together with $107 for court costs; (2) Iowa Beef shall recover $1,200 stipulated to be its reasonable attorney's fee; and (3) the bank shall recover $12,652.54. The court further ordered that Chaparral's request for foreclosure of its mechanic's and materialmen's lien is denied.

As requested by the bank, the court made and filed findings and amended findings of fact and conclusions and amended conclusions of law. Among the numbered findings of fact is the fourth one that Chaparral timely filed a mechanic's and materialmen's lien and gave timely notice of the filing to Iowa Beef. In its amended numbered findings, the court found that (9) the only written notice Chaparral gave Iowa Beef under the Texas Property Code was undated and mailed 31 December 1984,[4] (10) Chaparral did not give Iowa Beef a written notice of each and every month it delivered materials, and (11) Chaparral's undated written notice to Iowa Beef did not contain the statutory warning language of section 53.056(b), Texas Property Code. Notwithstanding the factual findings that Chaparral failed to comply with the notice requirements of the Texas Property Code, the court nevertheless concluded that Chaparral, a derivative claimant, is entitled to receive the full amount of its claim.

Appealing from the judgment, the bank contends, in a single point of error, that the uncontroverted evidence and unchallenged findings of fact and conclusions of law

2. Later, on 28 August 1985, Graves was discharged from bankruptcy.

3. Although Chaparral claimed in its lien affidavit that the parts and supplies it furnished totaled $14,282.10, the record indicates, and ap-

parently Chaparral accepts, that material in excess of $11,825.73 was used by Graves on another project.

4. The referenced notice contained in the appellate record is actually dated December 31, 1984.

show that Chaparral did not have a valid and enforceable mechanic's and materialmen's lien. This obtains, the bank submits, because Chaparral did not give Iowa Beef (1) the statutory warning and (2) the written notice for each month materials were delivered, both of which are necessary for the imposition of a mechanic's and materialmen's lien, and (3) the retention of funds by Iowa Beef does not impart validity to the otherwise invalid lien.

■ As a subcontractor, Chaparral is a derivative claimant. In that capacity, it is not afforded a constitutional, common law, or contractual lien on Iowa Beef's property; therefore, its right to a lien is totally dependent on its substantial compliance with the statutes authorizing the lien. *First Nat. Bank in Graham v. Sledge*, 653 S.W.2d 283, 285 (Tex.1983). The statutes are those now contained in the Texas Property Code Annotated, sections 53.001, *et seq.* (Vernon 1984).[5]

■ Upon furnishing the materials used by Graves in the construction of Iowa Beef's presses, Chaparral was statutorily granted a lien, section 53.021; but, to validate the lien, Chaparral was required to give Iowa Beef the notice required by section 53.056. To validate the lien on the funds held by Iowa Beef for the full amount of its lien claim, the notice required by Chaparral, section 53.056(c), not only must have been given within the time specified in section 53.056(b), but it must have stated "that if [Chaparral's lien claim] remains unpaid, [Iowa Beef] may be personally liable and [Iowa Beef's] property may be subjected to a lien unless:

(1) [Iowa Beef] withholds payments from [Graves] for payment of [Chaparral's lien claim]; or

(2) [Chaparral's lien claim] is otherwise paid or settled."

Section 53.056(d). The notice is a condition precedent, and in its absence, a lien for the full amount of the lien claim cannot attach to the funds held. *First Nat. Bank in Graham v. Sledge, supra,* at 287.

■ By its November 14 letter, Chaparral attempted to validate its lien and trap the funds owed to Graves by, and in the hands of, Iowa Beef. However, neither that letter nor the December 31 notice referred to in the trial court's factual findings contained the statutory warnings of Iowa Beef's possible personal liability and property encumbrance if Chaparral's lien claim was not paid or otherwise settled. As a result, Chaparral did not perfect its lien under section 53.056, which would authorize Iowa Beef to withhold the funds to pay its claim in full. Section 53.081; *First Nat. Bank in Graham v. Sledge, supra,* at 287.

Still, Iowa Beef was statutorily required to retain ten (10%) percent of the contract price for thirty days after completion of Graves' work, section 53.101, to secure the payment for Chaparral's materials. Section 53.102. Chaparral's statutory lien attaches to the ten percent retainage upon its giving the notice respecting the retainage and filing an affidavit claiming a lien not later than the 30th day after the work is completed. Section 53.103.

■ The notice required of Chaparral with respect to the lien on the retained funds is a written notice of the unpaid balance given to Iowa Beef "not later than the 90th day after the 10th day of the month following each month in which all or part of [Chaparral's] ... material ... was delivered." Section 53.056(b). Chaparral's November 14 letter, admittedly received by Iowa Beef, met the notice requirement, and its December 31 affidavit claiming the mechanic's and materialmen's lien was timely filed. Thus, Chaparral perfected its lien on the mandated retainage in the amount of $2,578.53, ten percent of the contract price. Section 53.103; *First Nat. Bank in Graham v. Sledge, supra,* at 287–88.

Then, to the extent explicated, the bank's point of error is sustained in part and overruled in part. In this connection, the bank has not challenged the trial court's award

5. All references to sections are to the sections of the Texas Property Code Annotated (Vernon 1984).

of $107 to Chaparral as court costs; and, although the bank prays for the stipulated attorney's fee of $1,200 awarded Iowa Beef to be assessed against Chaparral, the matter of the attorney's fee has not been preserved for review by a proper point of error. *See Isenhower v. Bell*, 365 S.W.2d 354, 358 (Tex.1963). Consequently, the trial court's judgment must be reformed only with respect to the amounts awarded to Chaparral and to the bank.

Accordingly, it is ordered that the judgment be reformed to decree that from the $25,785.27 tendered into the registry of the court by Iowa Beef Processors, Inc., Chaparral Electric Supply Corporation shall recover the sum of $2,578.53 instead of the $11,825.73 decreed by the judgment, and The First National Bank of Claude shall recover the sum of $21,899.74 instead of the $12,652.54 decreed by the judgment. Tex.R.App.Proc. 80(b)(2). As reformed, the judgment is affirmed.

As a consequence of the reformation and affirmance, costs of this appeal are taxed 80% to Chaparral Electric Supply Corporation and 20% to The First National Bank of Claude and its surety. Tex.R.App.Proc. 89.