TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00386-CV






CVN Group, Inc., Appellant



v.



Enrique Delgado and Marjorie Delgado, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 99-13857, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING





 Appellant, CVN Group, Inc. ("CVN"), brought an action seeking confirmation of an
arbitration award, in which CVN was awarded damages and declared to have a valid mechanic's and
materialman's lien on real property owned by Enrique and Marjorie Delgado. The trial court reduced
the damages award and declared the lien invalid. On appeal, CVN challenges the trial court's
authority to modify the arbitrator's damage award and vacate the granting of the lien. We will affirm
the decision of the trial court declaring the lien invalid. We will reverse and render on that portion
of the trial court's judgment modifying the damages awarded by the arbitrator.


BACKGROUND

 In August 1997, CVN contracted to design a house for the Delgados that the Delgados
intended to make their homestead. In October 1997, the parties contracted for CVN to oversee the
construction of that house. The October 1997 agreement (the "construction contract") contained
numerous provisions detailing the parties' rights and responsibilities, and concluded with a broad
arbitration agreement. (1)

 On July 27, 1998, the Delgados requested that CVN cease work. Taking this to be
a material breach of the construction contract, CVN demanded arbitration. The arbitration proceeded
as a documents-only arbitration; neither side presented any oral testimony. At arbitration, the dispute
between the parties focused on the various compensation clauses within the construction contract. 
The arbitrator returned a monetary-damages award in CVN's favor and declared that CVN possessed
constitutional and statutory mechanic's and materialman's liens on the Delgados' real property for
the full amount due. (2) In the award, the arbitrator specifically listed the types of claims asserted and
the corresponding amounts awarded, but no specific reasons were given explaining how the amounts
were calculated. For example, the builder's fee was set at $122,250, but the arbitrator did not
disclose the formula by which he arrived at that amount. Nor did the arbitrator explain his reasons
for determining that a valid lien existed on the Delgados' homestead. Because this proceeding was
a documents-only arbitration, we do not have a transcript of an arbitration hearing on which we may
rely in examining the award. The builder's fee, lien, post-award collection fees, and interest are all
at issue here. The remainder of the award was confirmed by the trial court and is not challenged on
appeal.

 Clause 21.1 of the construction contract contains the following language: "The Owner
shall pay to Project Manager a fee of eight percent (8%) multiplied by either (a) the cost of the work
or (b) the appraisal value of the completed project as determined by the lender, whichever is higher." 
A subsequent provision states that the Delgados acknowledge that the eight-percent fee was
discounted from CVN's full fee of fifteen percent. Following that acknowledgment, a penalty clause
states that the fee shall be raised to fifteen percent if the Delgados are late on any of their interim
payments. The arbitrator did not disclose the base amount or percentage he used in calculating the
builder's fee of $122,250. The arbitration clause gave the arbitrator broad authority to interpret the
contract, using all the documentary evidence presented to him, and calculate the fees owed to CVN. 
Absent a mistake of fact or law that results in fraud or a great and manifest wrong and injustice, a
court may not set aside an arbitrator's award. Nuno v. Pulido, 946 S.W.2d 448, 452 (Tex.
App.--Corpus Christi 1997, no writ).

 Both parties had the right to request findings of fact and conclusions of law from the
arbitrator. Neither party did so. Therefore, the record lacks any indication of the arbitrator's reasons
or calculations. However, following the confirmation hearing, the trial court did make findings of
fact and conclusions of law. As the trial court noted, it appears that the arbitrator used the appraised
value of the Delgados' home, rather than the cost of improvements, in determining the amount of
the builder's fee. (3) The trial court found no evidence had been produced at arbitration that
demonstrated the appraisal value was "determined by the lender," as the construction contract
required. Accordingly, the trial court modified the award using the $425,000 cost of improvements
as the basis for calculating the builder's fee. The trial court also found that there was no evidence
of any late interim payments by the Delgados. Accordingly, the trial court concluded that the
arbitrator overstepped his authority in awarding the fifteen-percent builder's fee. Additionally, the
court found the penalty provision, which raised the builder's fee from eight to fifteen percent,
constituted a charge, or a contract for the forbearance or the detention of money in excess of the
amount allowable by law and was, therefore, usurious and unenforceable.

 Based on these findings, the trial court concluded the builder's fee of $122,250
awarded by the arbitrator should be reduced to $34,000, which is eight percent of $425,000. The
parties did not challenge the arbitrator's findings regarding other fees owed to CVN or credits owed
to the Delgados for payments previously made. Taking into account the unchallenged fees and
credits and adding the reduced builder's fee, the trial court entered a judgment for CVN in the
amount of $22,775 plus $973 for arbitration costs.


DISCUSSION

 CVN raises eight points of error. Points one and two complain of the trial court's
reduction of the damages awarded to CVN by the arbitrator. Points seven and eight seek post-award
collection fees and interest. Points three through six advance CVN's argument that the trial court
erred in declaring that the Delgados had established the property as their homestead and that the lien
claimed by CVN was invalid and not subject to foreclosure.


Grounds to Review Arbitration Award

 We initially note that Texas law favors the arbitration of disputes. Brazoria County
v. Knutson, 176 S.W.2d 740, 743 (Tex. 1943). An arbitrator's award is entitled to great deference
in a court of law lest disappointed litigants seek to overturn every unfavorable arbitration award in
court. Daniewicz v. Thermo Instrument Sys., Inc., 992 S.W.2d 713, 716 (Tex. App.--Austin 1999,
pet. denied). Accordingly, every reasonable presumption will be indulged to uphold the arbitration
proceeding. Id.

 Arbitrators have traditionally enjoyed broad authority to fashion remedies designed
to fit the specific issues presented to them under an arbitration agreement. Id. at 718. A mere
mistake of fact or law is insufficient to set aside the arbitration award. J.J. Gregory Gourmet Servs.,
Inc. v. Antone's Import Co., 927 S.W.2d 31, 33 (Tex. App.--Houston [1st Dist.] 1995, no writ);
Riha v. Smulcer, 843 S.W.2d 289, 292 (Tex. App.--Houston [14th Dist.] 1992, writ denied). These
points of law are especially applicable in this case because of the dispute in the record as to the
appraisal value of the house and whether the Delgados had been timely in their payments. Because
the arbitrator enjoys broad discretion in interpreting both the facts and law applicable to a dispute,
a mere mistake on his part, in and of itself, does not permit modification of his award. Absent a
statutory or common-law ground to vacate or modify an arbitration award, a reviewing court lacks
jurisdiction to review other complaints, including the sufficiency of the evidence supporting the
award. J.J. Gregory, 927 S.W.2d at 33; Powell v. Gulf Coast Carriers, Inc., 872 S.W.2d. 22, 24
(Tex. App.--Houston [14th Dist.] 1994, no writ).

 The statutory grounds for vacating an arbitration award are, as follows: (1) it was the
product of corruption, fraud, or other undue means; (2) the parties' rights were prejudiced by the
evident partiality of one appointed as a neutral arbitrator, the arbitrator's corruption, misconduct, or
willful misbehavior; (3) the arbitrator exceeded his powers, refused to postpone the hearing after a
showing of sufficient cause, refused to hear evidence material to the controversy, or conducted the
hearing contrary to applicable law and in a manner that substantially prejudiced the rights of a party;
or (4) there was no agreement to arbitrate. Tex. Civ. Prac. & Rem. Code Ann. § 171.088 (West
Supp. 2001). The common-law grounds for vacating an arbitration award include fraud, misconduct,
or gross mistake that implies bad faith and failure to exercise honest judgment. J.J. Gregory, 927
S.W.2d at 33.

 The statutory grounds for modifying an arbitration award, applicable here, are as
follows: (1) it contains evident miscalculations of numbers or an evident mistake in the description
of a person, thing, or property referred to in the award; (2) the arbitrator awarded on matters not
submitted to him, and the award may be corrected without affecting the merits; or (3) there is an
error in form, not affecting the merits. Tex. Civ. Prac. & Rem. Code Ann. § 171.091 (West Supp.
2001); see also J.J. Gregory, 927 S.W.2d at 33. A mere mistake of fact or law is insufficient to
modify the arbitration award. Riha, 843 S.W.2d at 292.


Modification of Damages Award

 In its first point of error, CVN argues the trial court improperly modified the
arbitration award when it used the cost of improvements figure rather than the appraisal value as the
basis for determining the builder's fee. In the second point, CVN argues that the trial court erred in
concluding that the fifteen-percent builder's fee was usurious. CVN further complains that the trial
court's decision to use the eight-percent fee was an improper modification of an arbitration award.

 The Delgados counter that the appraisal value was determined in a manner that did
not comply with the construction contract. Essentially, the Delgados are questioning the arbitrator's
interpretation of the contract and the sufficiency of the documentary evidence presented to him. A
sufficiency of the evidence attack on an arbitration award fails as a matter of law. See J.J. Gregory,
927 S.W.2d at 33. A reviewing court lacks jurisdiction to review the sufficiency of the evidence
supporting the arbitration award. Id. The proper remedy for such a challenge is to seek a
clarification of the award from the arbitrator or request a finding of fact in order to examine the
validity of the award in a confirmation hearing. (4) In the present case, after application for
modification was requested and denied, the arbitrator clarified the award to correct a typographical
error. No further requests for clarification or findings of fact and conclusions of law were made by
either party.

 The arbitrator was within his authority in interpreting the construction contract
because of the broad arbitration clause contained therein. Whether the arbitrator arrived at an award
based upon a mistake of fact is irrelevant. See id. An arbitration award may not be modified unless
the trial court finds statutory grounds for such modification. Id. Here, the trial court improperly
altered the amount of the award because it acted without the necessary authorization from section
171.091 of the Texas Civil Practice and Remedies Code. The trial court modified the award, using
eight percent of the $425,000 cost of improvements as the basis to calculate the builder's fee owed
by the Delgados. In so doing, the trial court improperly revisited issues of both fact and law properly
submitted to, and determined by, the arbitrator. An arbitration award is conclusive on the parties as
to all matters of fact and law because the award has the effect of a judgment of a court of last resort. 
Anzilotti v. Gene D. Liggin, Inc., 899 S.W.2d 264, 266 (Tex. App.--Houston [14th Dist.] 1995, no
writ). CVN's first two points of error are sustained.

 In its seventh point of error, CVN argues the trial court erred in not affirming the
arbitrator's award of $5000 for post-arbitration, collection-related attorney's fees and appellate fees. 
The construction contract contains a liquidated damages clause that awards $5000 per breach of
section 36.8. That section contains language evidencing the parties' agreement that arbitration
would be binding on all complaints the parties had arising out of the construction contract. Given
the broad arbitration agreement in the construction contract, the arbitrator acted within his authority
to interpret this provision of that contract and fashion the award accordingly. See J.J. Gregory, 927
S.W.2d at 35. The arbitration award contained a clause awarding $5000 damages if the award was
not paid within thirty days of the date of the award. The arbitrator apparently interpreted a failure
to pay the award within thirty days as a breach of section 36.8's mandate that the arbitration be
binding on all parties. Again, because of the type of proceeding and the absence of findings by the
arbitrator, we are limited in our ability to discern the arbitrator's rationale. Accordingly, we must
conclude that the arbitrator did not exceed his authority by invoking the liquidated-damages clause. 
The trial court may not disturb this portion of the arbitration award. CVN's seventh point of error
is sustained.

 In its eighth point of error, CVN argues the trial court improperly changed the accrual
date for post-award interest from the date when the award was delivered to the date the trial court's
judgment was entered. The construction contract's arbitration clause gave the arbitrator the authority
to grant post-award interest at a lawful rate from the date of the arbitration award. The trial court's
abatement of post-award interest until entry of judgment was an improper modification of the award. 
Tex. Civ. Prac. & Rem. Code Ann. § 171.091. CVN's eighth point of error will be sustained.


Homestead Protection

 The Texas Constitution provides special protections for the homestead, separate and
distinct from those protections given other types of property. Tex. Const. art. XVI, § 50. Homestead
rights have historically enjoyed sacred levels of protection in our jurisprudence. Mills v. Von
Boskirk, 32 Tex. 360, 362 (1869) ("Amongst the old jurists three things-life, liberty and power-were
held sacred by the law, and we are disposed to protect the homesteads of families almost with equal
watchfulness."); see also In re Bradley, 960 F.2d 502 (5th Cir. 1992). (5) The homestead interest is
a legal interest created by the constitution that provides prophylactic protection from all but the few
specifically enumerated types of constitutionally permitted liens against homesteads. Heggen v.
Pemelton, 836 S.W.2d 145, 148 (Tex. 1992). 

 Homesteads are generally protected from forced sale for the payment of debts, except
for those debts specifically enumerated in the constitution, which include debts incurred for purchase
money on the homestead, for taxes owed thereon, and for work or services performed thereon. Tex.
Const. art. XVI, § 50(a)(1), (2), (5). Because the homestead protection does not extend to debts
incurred for improvements made to the homestead, laborers may secure a valid mechanic's and
materialman's lien against the homestead on which the work was performed, but only by following
certain constitutional and statutory procedures. Id. § 50(a)(5); Tex. Prop. Code Ann. § 53.254 (West
Supp. 2001).

 If the material and services were used in constructing new improvements to the
homestead, the constitution only requires that the work be contracted for in writing. Spradlin v. Jim
Walter Homes, Inc., 34 S.W.3d 578, 581 (Tex. 2000). Because the Delgados hired CVN to construct
a new residence on their homestead property, CVN needed only to have a written contract in order
to avoid the constitutional homestead protection. By having a written contract with the Delgados,
CVN is able to pierce the shield of the homestead protection. Tex. Const. art. XVI, § 50(a)(5). 
However, the constitutional exception to homestead protection does not create a mechanic's and
materialman's lien on the Delgados' homestead. Id. CVN must still comply with the requirements
found in section 53.254 of the Texas Property Code in order to have a valid lien on the Delgados'
homestead. Tex. Prop. Code Ann. § 53.254. Only upon satisfaction of those requirements may CVN
attempt to force the sale of the Delgados' homestead by judicial foreclosure. Id. § 53.154 (West
1995).

 To fix a lien on a homestead, the Property Code requires that (1) the person who is
to furnish material or perform labor and the owner must execute a written contract setting forth the
terms of the agreement; (2) the contract must be executed prior to the furnishing of materials or the
performance of labor; (3) if the owner is married, the contract must be signed by both spouses; (4)
if the contract is made by an original contractor, the contract must inure to the benefit of all persons
who perform labor or furnish materials for the original contractor; and (5) the contract must be filed
with the county clerk of the county in which the homestead is located. Id. § 53.254.


Foreclosure of a Mechanic's and Materialman's Lien

 A valid mechanic's and materialman's lien that has attached to a homestead is not
self-executing. A mechanic's and materialman's lien may only be foreclosed on, and a sale ordered
by, judicial action. Id. § 53.154. In a proceeding for judicial foreclosure of such a lien, the court
need not act as a rubber stamp. (6) As evidenced in First National Bank v. Sledge, 653 S.W.2d 283,
286-87 (Tex. 1983), a court has the authority to examine whether the contractor claiming the lien
complied with the statutory requirements prior to rendering a judgment ordering foreclosure. In that
case, the supreme court undertook an investigation of the record to see whether the subcontractors
had given proper notice to the homeowner as required by statute. Id. Finding that the subcontractors
failed to comply with the statute, the supreme court held that the subcontractors failed to timely
perfect their mechanic's and materialman's lien. Id. Constitutional homestead rights protect citizens
from losing their homes; accordingly, statutes relating to homestead rights are to be liberally
construed to protect the homestead. Rooms With a View, Inc. v. Private Nat'l Mortgage Assoc., Inc.,
7 S.W.3d 840, 849 (Tex. App.--Austin 1999, pet. denied). In order to safeguard the homestead
protection, and comply with the legislative intent expressed in the Property Code, a court should
review the validity of the lien prior to ordering or denying foreclosure. See Sledge, 653 S.W.2d at
286-87; Rooms With a View, 7 S.W.3d at 849.

 The trial court acted properly in examining the validity of the mechanic's and
materialman's lien. In conducting the examination of the arbitration record, the trial court found that
CVN failed to comply with the applicable statutory requirements for obtaining a lien on the
Delgados' homestead. At the award confirmation hearing in the trial court, the parties focused a
great deal on whether a contract, which demonstrated that CVN held a mechanic's and
materialman's lien on the Delgados' homestead, had been acknowledged by both parties and filed
with the county clerk in the county in which the Delgados' homestead was located. Tex. Prop. Code
Ann. § 53.254(e). CVN claimed it had properly filed a mechanic's and materialman's lien contract
(the "lien contract") with the county clerk of Travis County. CVN also claimed that the lien contract
had been signed by the Delgados and had been properly notarized. The trial court determined that
such a contract did not appear in the documents-only arbitration record. It is noteworthy that we
have searched the trial-court record exhaustively and have been unable to find a copy of the lien
contract. At the award confirmation hearing, both parties argued about the burden of producing the
lien contract to prove up any defects the Delgados were alleging, but neither party produced the
document. In fact, CVN only produced the lien contract in its appellate reply brief; however, that
does not make the lien contract part of our record. We must hear and determine a case on the record
as filed. Mitchison v. Houston Indep. Sch. Dist., 803 S.W.2d 769, 771 (Tex. App.--Houston [14th
Dist.] 1991, writ denied). We cannot consider documents attached as exhibits or appendices to briefs
or motions. Id. After hearing oral argument concerning the lien contract, but never having been
presented with such a document, the trial court concluded that the evidence failed to show that CVN
had properly filed an acknowledged lien contract. In light of CVN's failure to provide that
document, we cannot say the trial court abused its discretion in refusing to find that CVN possessed
a valid lien.

 Furthermore, the record contains a mechanic's lien affidavit (the "lien affidavit"), to
which CVN's president attested. A careful reading of that document reveals that CVN's purported
lien is defective. The statute requires a valid lien affidavit be filed with the county clerk no later than
the fifteenth day of the third calendar month after the day on which the indebtedness accrues. Tex.
Prop. Code Ann. § 53.052(b) (West Supp. 2001). The Property Code states that indebtedness
accrues on the last day of the month in which either the owner or the general contractor terminates
the contract. That termination, according to CVN, occurred on July 27, 1998. To properly comply,
CVN would have had to file its lien affidavit by October 15, 1998. CVN filed its lien affidavit on
November 24, 1998. Thus, CVN's lien affidavit was not timely filed in violation of the Property
Code requirements.

 In the lien affidavit, CVN's president stated that CVN first furnished materials, labor,
or services on August 15, 1997, and last furnished the same on November 14, 1998. In order to fix
a lien on a homestead, the contract must be executed before the material is furnished or the labor is
performed. Id. § 53.254(b). The Delgados did not enter into a valid written contract with CVN until
October 10, 1997. No other contracts appear in the record. Accordingly, CVN failed to comply with
another of the statutory requirements for fixing a lien against a homestead. Therefore, the trial court
properly examined the record and refused to foreclose an invalid lien. Based upon the record before
us, we cannot say that the trial court erred in this regard. We will overrule CVN's third and fifth
points of error. In light of this decision, we need not examine CVN's fourth and sixth points of
error.


CONCLUSION

 A trial court lacks the authority to revisit the determinations, interpretations, and
conclusions of a duly appointed arbitrator regarding damages absent statutory authorization. The
decision of the trial court to reduce the amount of damages awarded to CVN, including the denial
of the liquidated damages and post-award interest, is reversed. Judgment is rendered confirming the
arbitration award in this respect. However, the power of foreclosure of a mechanic's and
materialman's lien lies exclusively with the judiciary. The trial court's decision to investigate the
validity, and to refuse the foreclosure of CVN's mechanic's and materialman's lien on the Delgados'
homestead was proper. We affirm the trial court's decision declaring the lien invalid and denying
foreclosure.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed in Part; Reversed and Rendered in Part

Filed: May 10, 2001

Publish

1. The Arbitration Clause reads as follows:


36.1 Claims, disputes or other matters in question between the parties to this
Agreement arising out of or relating to this Agreement or breach thereof shall
be subject to and decided by arbitration in accordance with the Construction
Industry Arbitration Rules of the American Arbitration Association currently in
effect unless the parties mutually agree otherwise in writing.
2. In its findings of fact, the trial court declared that the Delgados' real property, which includes
their land and house, is the Delgados' homestead, and that this was undisputed in the evidence and
the argument submitted at arbitration. CVN claims to possess a mechanic's and materialman's lien
on that real property. For convenience, we will refer to the Delgados' land and house, collectively,
as their homestead.
3. The trial court's findings of fact reflect that the cost of improvements to the house was
$425,000, and that this amount appeared as an uncontroverted fact in the arbitration record. 
However, the record contains multiple appraisals. The lowest appraisal value we could find in the
record is $448,360; the highest value is $883,230. The arbitrator awarded CVN a builder's fee of
$122,250. By reversing the calculations, we can gain some insight into the formula used by the
arbitrator. A builder's fee of $122,250 appears to be fifteen percent of $815,000. Additionally, the
trial court's findings of fact and conclusions of law state that the arbitrator exceeded his authority
in using the fifteen-percent builder's fee. In modifying the award, the trial court used the eight-percent builder's fee. 
4. Under section 171.054 of the Texas Civil Practice and Remedies Code, an arbitration panel
may correct or modify its own award upon application by a party, but the General Arbitration Act
prohibits a court from clarifying or correcting an award absent one of the specific grounds laid out
in section 171.091. Tex. Civ. Prac. & Rem. Code Ann. §§ 171.054, .091 (West Supp. 2001). 
Furthermore, absent findings of fact and conclusions of law, we cannot formulate an opinion on
whether the arbitrator's conduct invoked the statutory grounds for modifying an award, as this was
a documents-only arbitration and no testimony appears in the record.
5. Even before the ink had dried on the joint resolution of Congress that admitted Texas
as the twenty-eighth state in the Union, Texas citizens enjoyed broad homestead rights. 
Not much has changed in the last 145 or so years. As it did in the dawning days of the
state, the homestead exemption in Texas continues to 'protect citizens and their
families from the miseries and dangers of destitution.'


In re Bradley, 960 F.2d 502, 505 (5th Cir. 1992) (citations omitted).
6. In Vineyard v. Irvin, the court was asked to interpret section 338 of the Probate Code, which
requires a separate judicial order for the sale of the mortgaged property based generally on the
probate court's determination of the best interest of the estate as weighed against the rights of the
creditor. Vinyard v. Irvin, 855 S.W.2d 208, 210 (Tex. App.--Corpus Christi 1993, no writ). In this
regard, a section 338 order for the sale of mortgaged property is not merely a ministerial function but
requires the exercise of some judicial discretion and thus is more in the nature of a foreclosure
judgment than merely a writ of execution. Id. (citing Tex. R. Civ. P. 309). Vineyard is analogous
to the present situation because CVN asked the trial court to rule on the validity of a mechanic's and
materialman's lien, which requires judicial foreclosure.



decision of the trial court to reduce the amount of damages awarded to CVN, including the denial
of the liquidated damages and post-award interest, is reversed. Judgment is rendered confirming the
arbitration award in this respect. However, the power of foreclosure of a mechanic's and
materialman's lien lies exclusively with the judiciary. The trial court's decision to investigate the
validity, and to refuse the foreclosure of CVN's mechanic's and materialman's lien on the Delgados'
homestead was proper. We affirm the trial court's decision declaring the lien invalid and denying
foreclosure.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed in Part; Reversed and Rendered in Part

Filed: May 10, 2001

Publish

1. The Arbitration Clause reads as follows:


36.1 Claims, disputes or other matters in question between the parties to this
Agreement arising out of or relating to this Agreement or breach thereof shall
be subject to and decided by arbitration in accordance with the Construction
Industry Arbitration Rules of the American Arbitration Association currently in
effect unless the parties mutually agree otherwise in writing.
2. In its findings of fact, the trial court declared that the Delgados' real property, which includes
their land and house, is the Delgados' homestead, and that this was undisputed in the evidence and
the argument submitted at arbitration. CVN claims to possess a mechanic's and materialman's lien
on that real property. For convenience, we will refer to the Delgados' land and house, collectively,
as their homestead.
3. The trial court's findings of fact reflect that the cost of improvements to the house was
$425,000, and that this amount appeared as an uncontroverted fact in the arbitration record. 
However, the record contains multiple appraisals. The lowest appraisal value we could find in the
record is $448,360; the highest value is $883,230. The arbitrator awarded CVN a builder's fee of
$122,250. By reversing the calculations, we can gain some insight into the formula used by the
arbitrator. A builder's fee of $122,250 appears to be fifteen percent of $815,000. Additionally, the
trial court's findings of fact and conclusions of law state that the arbitrator exceeded his authority
in using the fifteen-percent builder's fee. In modifying the award, the trial court used the eight-percent builder's fee. 
4. Under section 171.054 of the Texas Civil Practice and Remedies Code, an arbitration panel
may correct or modify its own award upon application by a party, but the General Arbitration Act
prohibits a court from clarifying or correcting an award absent one of the specific grounds laid out
in section 171.091. Tex. Civ. Prac. & Rem. Code Ann. §§ 171.054, .091 (West Supp. 2001). 
Furthermore, absent findings of fact and conclusions of law, we cannot formulate an opinion on
whether the arbitrator's conduct invoked the statutory grounds for modifying an award, as this was
a documents-only arbitration and no testimony appears in the record.
5. Even before the ink had dried on the joint resolution of Congress that admitted Texas
as the twenty-eighth state in the Union, Texas citizens enjoyed broad homestead rights. 
Not much has changed in the last 145 or so years. As it did in the dawning days of the
state, the homestead exemption in Texas continues to 'protect citizens and their
families from the miseries and dangers of destitution.'


In re Bradley, 960 F.2d 502, 505 (5th Cir. 1992) (citations omitted).
6. In Vineyard v. Irvin, the court was asked to interpret section 338 of the Probate Code, which
requires a separate judicial order for the sale of the mortgaged property based generally on the
probate court's