**CVN GROUP, INC, Petitioner,**

v.

**Enrique DELGADO and Marjorie Delgado, Respondents.**

No. 01–0682.

Supreme Court of Texas.

Argued March 27, 2002.

Decided Dec. 31, 2002.

Elizabeth G. Bloch, Hilgers & Watkins, Gregory Dean Kocian, Austin, for petitioner.

Mitchell Dodd Savrick, Savrick Schumann Johnson & McGarr, Austin, for respondent.

Justice HECHT delivered the opinion for the Court, joined by Chief Justice PHILLIPS, Justice OWEN, Justice JEFFERSON, Justice SCHNEIDER, and Justice SMITH.

The lower courts in this case have refused to foreclose mechanic's liens awarded by arbitration on the ground that the evidence before the arbitrator did not es-

tablish that the liens were valid.[1] We hold that the lower courts have exceeded their authority to review an arbitration award. Accordingly, we reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

## I

CVN Group, Inc. furnished Enrique and Marjorie Delgado labor and materials under a written contract for construction of their home. The contract provided that "[c]laims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration...." Before construction was completed, the Delgados instructed CVN to cease work. CVN asserted that the Delgados had materially breached the contract and demanded arbitration.

An arbitrator was appointed, and the parties submitted their dispute on documents and briefs without live testimony, as

they had agreed to do in their contract.[2] CVN requested $156,865.74 in damages, plus interest and attorney fees, and "an award establishing a valid lien against [the Delgados'] homestead." The Delgados responded that they were not indebted to CVN and that its lien claims were invalid because CVN filed its lien affidavit late and did not record their contract, citing sections 53.052(b) and 53.254(e) of the Property Code.[3] CVN replied that its lien affidavit had been timely filed and the contract properly recorded. The Delgados raised no other defenses to CVN's lien claims and did not challenge the arbitrator's authority to decide their validity. The arbitrator awarded CVN $110,925.10 and found "valid statutory[4] and constitutional[5] mechanic's liens for the full award".[6] The parties were entitled to request findings of fact and conclusions of law, but no one did, and none were made.

CVN applied to the district court to confirm the award and foreclose its me-

1. 47 S.W.3d 157 (Tex.App.-Austin 2001).

2. "Unless otherwise agreed to in writing by all parties to this Agreement, all arbitration proceedings arising out of or relating to this Agreement shall be decided by documents exchanged between the parties and submitted to the arbitrator or arbitrators and without a formal hearing at which the parties would typically be required to appear in person.... Testimony submitted by persons or entities not a party to this Agreement shall be by sworn affidavit."

3. Tex. Prop.Code § 53.052(b) ("A person claiming a lien arising from a residential construction project must file an affidavit with the county clerk of the county in which the property is located not later than the 15th day of the third calendar month after the day on which the indebtedness accrues."); § 53.254(e) ("The contract must be filed with the county clerk of the county in which the homestead is located. The county clerk shall record the contract in records kept for that purpose.").

4. *Id.* §§ 53.001–.260.

5. Tex. Const. art. XVI, § 37 ("Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."); *id.* § 50(a) ("The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for: ... (5) work and material used in constructing new improvements thereon, if contracted for in writing...."); *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578 (Tex. 2000); *Strang v. Pray*, 89 Tex. 525, 35 S.W. 1054, 1056 (1896).

6. *CVN Group Inc. v. Delgado*, Amer. Arb. Ass'n Matter No. 70 1 10 00278 98 (Sept. 29, 1999, modified Nov. 22, 1999).

chanic's liens.[7] The Delgados answered that the award should be vacated or modified because, in their words, the award was "manifestly unjust and constituted usury", "there was absolutely *no evidence* presented by [CVN] that the lien satisfied the necessary constitutional and statutory provisions", and "[t]he lien granted to [CVN] in the arbitration award violates [the Delgados'] constitutional rights, exceeds the Arbitrator's powers, and is unenforceable as an unconstitutional lien on [the Delgados'] homestead." The Delgados also sought a declaration that CVN was not entitled to foreclose its mechanic's liens because the arbitrator had denied that relief. The trial court reviewed the arbitration record and concluded that the award should be reduced to $22,775.10, and that CVN was not entitled to foreclose its mechanic's liens. Regarding CVN's lien claims, the court found that:

- CVN "failed to comply with applicable constitutional and statutory requirements for obtaining a lien on [the Delgados'] homestead, [and therefore] the Arbitrator exceeded his powers and/or authority in granting [CVN] an unconstitutional lien against [the Delgados'] homestead";

- "[i]t was undisputed in the evidence and argument submitted to the Arbitrator that the written contract between [CVN] and [the Delgados] was not acknowledged as required by the Texas Constitution", that "the written contract was not recorded ... as required by applicable law", and that CVN "failed to timely file its lien affidavit as required by applicable law";

- "the constitution and statutory protection afforded homesteads constitutes a fundamental public policy which allows this Court to vacate/modify/correct an arbitration award which is in violation of such fundamental public policy";

- absent evidence supporting an arbitration award creating a lien on a homestead, foreclosure would violate the Texas Constitution.

The trial court rendered judgment accordingly.

CVN appealed. The court of appeals reversed the trial court's reduction of the damages in the arbitration award but affirmed the trial court's refusal to foreclose CVN's mechanic's liens awarded by arbitration.[8] Noting that the Legislature in the Property Code had imposed a number of requirements for perfecting mechanic's liens on homesteads, the appeals court reasoned:

A mechanic's and materialman's lien may only be foreclosed on, and a sale ordered by, judicial action [citing section 53.154 of the Property Code[9]].... In order to safeguard the homestead protection, and comply with the legislative intent expressed in the Property Code, a court should review the validity of the lien prior to ordering or denying foreclosure.[10]

Reviewing the arbitration record, the court concluded that CVN had failed to prove that it had filed an acknowledged contract as required by section 53.254(e) of the Property Code, or timely filed a lien affidavit as required by section 53.052(b) of the Property Code.[11] The court went further

---

7. TEX. CIV. PRAC & REM.CODE §§ 171.001–.098.

8. 47 S.W.3d at 159.

9. TEX. PROP.CODE § 53.154 ("A mechanic's lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien.").

10. 47 S.W.3d at 164–165.

11. *Id.* at 165–166.

and concluded that CVN had also failed to prove that its contract with the Delgados had been signed before material was furnished or work performed as required by section 53.254(b) of the Property Code.[12] The Delgados had not argued in their brief to the arbitrator that the contract was not acknowledged, nor had they argued to the arbitrator or the trial court that they had signed their contract after work had begun. The appeals court held that because "the power of foreclosure of a mechanic's and materialman's lien lies exclusively with the judiciary", "[t]he trial court's decision to investigate the validity, and to refuse the foreclosure of CVN's mechanic's and materialman's lien on the Delgados' homestead was proper." [13]

CVN petitioned this Court for review of the court of appeals' refusal to order its mechanic's lien foreclosed.[14] The Delgados have not petitioned for review of the confirmation of the arbitration award of damages.

## II

The Delgados do not argue that issues relating to the validity of CVN's claimed mechanic's liens are outside the scope of their agreement to arbitrate, which was clearly broad enough to encompass such issues. Nor do they argue that there are statutory grounds to vacate [15] or modify [16] the arbitration award. Rather, they argue that the "*common law* allows (and may even require) a court to overturn an arbitrator's award that is unconstitutional or otherwise violates public policy."

In 1936, we held in *Smith v. Gladney*, that "a claim arising out of an illegal transaction ... is not a legitimate subject of arbitration, and an award based thereon is void and unenforceable in courts of the country." [17] The claim there was for a debt that was incurred trading in futures on the Chicago Board of Trade, what we called "a gambling transaction". We have not had occasion to revisit the subject of when judicial enforcement of arbitration awards must be withheld for reasons of legal or public policy, but two courts of appeals have weighed in. One court refused to uphold an arbitration award upholding the termination of an employee for

12. *Id.* at 166.

13. *Id.* at 166–167.

14. 45 Tex. Sup.Ct. J. 412 (Feb. 28, 2002).

15. Tex. Civ. Prac. & Rem.Code § 171.088(a) ("On application of a party, the court shall vacate an award if: (1) the award was obtained by corruption, fraud, or other undue means; (2) the rights of a party were prejudiced by: (A) evident partiality by an arbitrator appointed as a neutral arbitrator; (B) corruption in an arbitrator; or (C) misconduct or wilful misbehavior of an arbitrator; (3) the arbitrators: (A) exceeded their powers; (B) refused to postpone the hearing after a showing of sufficient cause for the postponement; (C) refused to hear evidence material to the controversy; or (D) conducted the hearing, contrary to Section 171.043, 171.044, 171.045, 171.046, or 171.047, in a manner that substantially prejudiced the rights of a party; or (4) there was no agree-ment to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection.").

16. *Id.* § 171.091(a) ("On application, the court shall modify or correct an award if: (1) the award contains: (A) an evident miscalculation of numbers; or (B) an evident mistake in the description of a person, thing, or property referred to in the award; (2) the arbitrators have made an award with respect to a matter not submitted to them and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted; or (3) the form of the award is imperfect in a manner not affecting the merits of the controversy.").

17. 128 Tex. 354, 98 S.W.2d 351, 351 (1936).

filing criminal assault charges against a supervisor in violation of a collective bargaining agreement that required exhaustion of grievance procedures before bringing "suit or other action", concluding that the arbitration award was "repugnant to both federal and state public policy to the extent that it forces employees using the grievance procedure to delay the filing of criminal charges growing out of the subject matter of the grievance until the grievance procedure has been exhausted."[18] The other court refused to confirm an arbitration award of damages for unused sick leave in violation of article III, section 53 of the Texas Constitution, which prohibits a grant of extra compensation after service had been rendered.[19] Neither of these courts of appeals was called upon to consider whether common law grounds for refusing to confirm arbitration awards have been preempted by statutes governing arbitration,[20] nor have the parties raised that issue here. Accordingly, we assume the law is as we stated it in *Smith.*

Subject to this assumption, one can readily see that an illegal contract unenforceable by litigation should not gain legitimacy through arbitration. A debt that indisputably arises from gambling, for example, should have no greater claim to judicial enforcement by confirmation of an arbitration award than by litigation. Judicial participation in the collection of the debt by either mechanism is precluded by public policy. On the other hand, it is no more against policy to arbitrate *whether* a debt has arisen from gambling or some other activity rendering it unenforceable, as opposed to some legitimate activity, than it is to litigate the same issue. It is one thing for a court to refuse to confirm an arbitration award that is expressly based on a legally unenforceable obligation, as we did in *Smith;* it is quite another thing for a court to re-examine whether an arbitrator has correctly determined that an obligation is not of the sort that is legally unenforceable. These are the clearer ends of a broad spectrum of cases in some of which a court should not ignore the plain character of an award, no matter how the arbitrator characterized it, and in others of which a court should not be permitted to reassess an arbitrator's decision on disputed evidence regarding the character of the obligation.

Subjecting arbitration awards to judicial review adds expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical system for resolving disputes. Accordingly, we have long held that "an award of arbitrators upon matters submitted to them is given the same effect as the judgment of a court of last resort. All reasonable presumptions are indulged in favor of the award, and none against it."[21] The United States Supreme Court has held in the context of labor law that to set aside an arbitration award as contrary to public policy, that policy "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public

---

**18.** *Goodyear Tire & Rubber Co. v. Sanford,* 540 S.W.2d 478, 484 (Tex.Civ.App.-Houston [14th Dist.] 1976, no writ).

**19.** *Lee v. El Paso County,* 965 S.W.2d 668, 673 (Tex.App.-El Paso 1998, pet. denied).

**20.** *Cf.* TEX. CIV. PRAC. & REM.CODE § 171.087 ("Unless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091, the court, on application of a party, shall confirm the award.").

**21.** *City of San Antonio v. McKenzie Constr. Co.,* 136 Tex. 315, 150 S.W.2d 989, 996 (1941).

interests.' " [22]  In another case it reiterated that "a formulation of public policy based only on 'general considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective-bargaining agreement." [23]  In both cases the Court also held that any claimed violation of such public policy must be carefully scrutinized to protect the arbitration award from unwarranted judicial interference.[24]  In neither case did the Court find a violation of public policy.

■ We agree that an arbitration award cannot be set aside on public policy grounds except in an extraordinary case in which the award clearly violates carefully articulated, fundamental policy. The Delgados argue, and the court of appeals determined, that the policy at stake in the present case is protection of the homestead. The homestead is given special protections in the Texas Constitution [25] and in the Property Code provisions dealing with mechanic's liens.[26]  An arbitration award made in direct contravention of those protections would violate public policy. Thus, had the arbitrator wholly disregarded the constitutional and statutory requirements for perfecting a mechanic's lien on a homestead and held that a lien should be valid without regard to such requirements, the award would contravene public policy. The mechanic's liens awarded

CVN do not contravene constitutional and statutory protections. The Delgados' arguments that CVN had failed to satisfy two of the requirements for perfecting its liens were disputed by CVN and were submitted to the arbitrator and decided on evidence and briefs. The Delgados argue that the arbitrator was wrong and the lower courts agreed, but an arbitrator's mere disagreement with a judge does not violate public policy. Nothing in the arbitration proceeding indicates that the arbitrator completely disregarded the requirements for perfecting mechanic's liens.

### III

■ The dissent makes a broader argument than do the Delgados. The dissent contends that the validity of mechanic's liens can never be arbitrated, regardless of the parties' agreement or whether a homestead is involved, because of section 53.154 of the Property Code which provides that, unlike some other liens, "[a] mechanic's lien may be foreclosed only on judgment of a court".[27]  The dissent extrapolates from this requirement of judicial foreclosure that courts are the exclusive arbiters of whether the technical requirements for perfecting a mechanic's lien have been satisfied.

Nothing in the language or history of section 53.154 supports the dissent's position. The statutory language dates back to 1871, when the Legislature enacted a

---

**22.** *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) (quoting *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 89 L.Ed. 744 (1945).)

**23.** *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 44, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

**24.** *See W.R. Grace,* 461 U.S. at 767–768, 103 S.Ct. 2177; *United Paperworkers,* 484 U.S. at 44–45, 108 S.Ct. 364.

**25.** Tex. Const. art. XVI, § 50.

**26.** Tex. Prop.Code § 53.254.

**27.** Tex. Prop.Code § 53.154 ("A mechanic's lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien.").

statute providing that the sale of property to satisfy a mechanic's lien was "to be upon judgment rendered by some court of competent jurisdiction foreclosing such lien and ordering sale of such property." [28] By that time, arbitration was already well entrenched in Texas procedure. The 1869 Constitution required the Legislature to pass laws facilitating arbitration, which it called a "method of trial," [29] as had the 1845 Constitution.[30] In 1856 this Court had described arbitration as "a mode of trial guaranteed by the Constitution and regulated by statute ... as effectual to settle finally and conclusively the rights of parties as any other mode of trial known to the law." [31] Nothing in this historical record suggests that the Legislature mistrusted arbitration to determine the validity of mechanic's liens.

█ Nor does it make sense that the Legislature, in order to protect judicial discretion in foreclosing mechanic's liens, would insist on a judicial determination of technical issues—in this case, for example, whether the contract and lien affidavit were timely—while leaving the more substantive issues regarding the extent of performance and the existence and amount of a debt to arbitration. Moreover, for constitutional liens that are self-executing, there are no technical requirements,[32] and therefore under the dissent's theory, no judicial discretion is preserved at all. The dissent does not attempt to explain why the Legislature would want to preserve judicial discretion in foreclosing statutory mechanic's liens but not in foreclosing constitutional mechanic's liens.

The dissent argues that because the Texas Arbitration Act is to be construed uniformly with other states' arbitration laws,[33] and because other states do not permit the validity of a mechanic's lien to be arbitrated, Texas should follow the other states' construction of their own arbitration statutes. It is the minor premise of this syllogism that is flawed: not one reported case in the United States has ever *held* that the validity of a mechanic's lien cannot be arbitrated between the parties to the arbitration agreement.

As the "seminal case in this area",[34] the dissent cites the 1934 decision of the New York Court of Appeals in *Brescia Construction Co. v. Walart Construction Co.*[35] There, Walart had discharged Brescia's mechanic's lien by posting a bond as permitted by law. Brescia sued Walart and the surety on the bond, New Amsterdam

---

**28.** Act approved Nov. 17, 1871, 12th Leg., 2d Sess., ch. 34, § 3, 1871 Tex. Gen. Laws 28, 29, *reprinted in* 7 H.P.N. Gammel, The Laws of Texas 1871–1873, at 30, 31 (Austin, Gammel Book Co. 1898).

**29.** Tex. Const. of 1869, art. XII, § 11 ("It shall be the duty of the Legislature to pass such laws as may be necessary and proper, to decide differences by arbitration, when the parties shall elect that method of trial.").

**30.** Tex. Const. of 1845, art. VII, § 15 ("It shall be the duty of the Legislature to pass such laws as may be necessary and proper to decide differences by arbitration, when the parties shall elect that method of trial."). *See generally* Paul Carrington, *The 1965 General Arbitration Statute of Texas*, 20 Sw. L.J. 21, 23

(1966); Peter F. Gadza, *Arbitration: Making Court–Annexed Arbitration an Attractive Alternative in Texas*, 16 St. Mary's L.J. 409, 422–423 (1985).

**31.** *Forshey v. G.H. & H. Railroad Co.*, 16 Tex. 516, 539 (1856).

**32.** See note 5 *supra*.

**33.** Tex. Civ. Prac. & Rem.Code § 171.003 ("This chapter shall be construed to effect its purpose and make uniform the construction of other states' law applicable to an arbitration.").

**34.** *Post* at 250.

**35.** 264 N.Y. 260, 190 N.E. 484 (1934).

Casualty Co., to foreclose its lien on the bond, as it was required to do by statute.[36] Brescia and Walart had agreed to arbitrate "all questions" relating to their contract and the work performed, but New Amsterdam was not a party to this agreement. The trial court ordered arbitration concerning only what amount was owed Brescia, not whether its lien had been validly perfected. Nevertheless, the arbitrators issued an award that determined not only the amount owed but the validity of the lien, thereby deciding New Amsterdam's obligation to pay. The court of appeals held that New Amsterdam was bound by the arbitrators' determination of the amount owed because it had agreed as surety to pay whatever debt Walart was determined to owe Brescia, but was not bound by the arbitrators' determination of the validity of Brescia's lien because New Amsterdam had never agreed to arbitrate those issues, there was no statute compelling it to do so, and the issues were outside the scope of the trial court's order of referral. "It may be," the court observed, "that the adjudication of the amount due [Brescia] will leave no substantial issues to be tried in the action [to foreclose its lien]." [37]

*Brescia* thus stands only for the wholly unremarkable conclusion that a party is not bound by an arbitration to which it did not agree and which was not required by statute or order. The dissent is incorrect when it states that in *Brescia* "the contract between *the parties* contained a broad arbitration provision", that "*[t]he parties* submitted the dispute to arbitration", and

that "because *the parties* agreed in the construction agreement to arbitrate disputes arising under the contract, the surety could not object".[38] New Amsterdam, the surety, was a party to the litigation—indeed, it was *the* party against whom Brescia sought to obtain judgment—and it neither submitted nor agreed to submit any issue for arbitration. Although New York law, like Texas law, required judicial foreclosure of a mechanic's lien, *Brescia* does not suggest that that requirement placed issues relating to the validity of the lien beyond arbitration. *Brescia* deals with the scope of an arbitration agreement and a court order requiring arbitration; it says nothing about statutory or other policy.

*Brescia's* acknowledgment that arbitrating the amount owed would likely "leave no substantial issues to be tried" regarding perfection of a lien undercuts the dissent's argument that reserving those issue for litigation preserves important judicial discretion in foreclosing mechanic's liens. The observation is one that is entirely obvious: once the debt issues are resolved, technical preservation issues are usually of little moment.

The dissent cites strings of cases to show that debt issues can be separated from lien-preservation issues, which, of course, they can. For the proposition that lien validity issues are not arbitrable, however, the dissent cites six cases and two commentaries.[39] One case holds that the parties did not agree to arbitrate the valid-

---

**36.** N.Y. LIEN LAW § 41 (McKinney 2002) ("A mechanic's lien on real property may be enforced against such property, and against a person liable for the debt upon which the lien is founded, by an action, by the lienor, his assignee or legal representative, in the supreme court or in a county court otherwise having jurisdiction, regardless of the amount of such debt, or in a court which has jurisdic-

tion in an action founded on a contract for a sum of money equivalent to the amount of such debt.").

**37.** 190 N.E. at 487.

**38.** *Post* at 250, 251 (emphasis added).

**39.** *Post* at 251–52.

ity of a lien,[40] three cases hold that an agreement to arbitrate does not waive the right to a mechanic's lien,[41] one case holds that an arbitration agreement does not divest a court of jurisdiction to foreclose a mechanic's lien,[42] and one case holds that some of the attorney fees incurred in arbitration can be awarded in a suit to foreclose a mechanic's lien.[43] The commentaries state that *if* only the amount of the debt secured by a mechanic's lien is arbitrated, the arbitrator may not be in a position to find whether the procedural requirements for perfecting a lien have been met,[44] and the validity of the lien must be litigated.[45] No authority the dissent cites, and none we have found, holds that issues related to the validity of a mechanic's lien cannot be arbitrated if the lien must be judicially foreclosed. Therefore, uniformity of Texas arbitration law with other states' laws does not prohibit lien validity issues from being arbitrated.

The dissent argues that a judicial determination of the validity of a mechanic's lien is necessary to protect the homestead. As we have already observed, there is nothing in the statutory history to support this view. Furthermore, to the obvious question—why are homestead rights adequately protected if the most significant issues are arbitrated and the least significant litigated—the dissent has no answer. Were there an answer to this question (there is none), and were there some explanation for the necessity of protecting homestead rights from arbitration (there is none), and were it shown that that protection is not secured by a trial court's authority to refuse to *confirm* an award contrary to public policy (it has not been), the dissent's argument still does not justify requiring a judicial determination of technical lien perfection issues in *non-homestead* cases, which many, if not most, are. Nothing suggests that the Legislature has required judicial foreclosure of mechanic's liens on non-homestead property in order to protect homesteads.

■ Two Texas cases, *Dalton Contractors, Inc. v. Bryan Autumn Woods, Ltd.*[46] and *Hearthshire Braeswood Plaza, Ltd. Partnership v. Bill Kelly Co.,*[47] have concluded that the parties affected by a me-

---

**40.** *B & M Constr., Inc. v. Mueller,* 164 Ariz. 52, 790 P.2d 750 (Ct.App.1989).

**41.** *Sorg v. Crandall,* 233 Ill. 79, 84 N.E. 181 (1908) (per curiam); *Buckminster v. Acadia Village Resort, Inc.,* 565 A.2d 313 (Me.1989); *Pine Gravel, Inc. v. Cianchette,* 128 N.H. 460, 514 A.2d 1282 (1986).

**42.** *Mills v. Robert W. Gottfried, Inc.,* 272 So.2d 837 (Fla.Dist.Ct.App.1973).

**43.** *Harris v. Dyer,* 292 Or. 233, 637 P.2d 918 (1981), *aff'g as modified,* 50 Or.App. 223, 623 P.2d 662 (1981).

**44.** Judah Lifschitz & Randal W. Max, Mechanic's Liens, Construction Briefings (2d ed. 2000) ("Keep in mind that different questions may be at issue in an arbitration proceeding and a mechanics' lien proceeding. Thus, even if an arbitration is rendered in the lien claimant's favor, that award may not establish all the facts necessary to enforce the lien. For example, to enforce a lien there must be notice on the proper owner as required by the statute and a public filing of the claim. An arbitrator generally is not in a position to find that these procedural requirements have been met." (Footnote omitted.)).

**45.** John G. McGill, *Liens and Arbitration,* 13 APR Constr. Law. 2, at 14 (1993) ("In coordinated proceedings, the arbitration will be used to establish the amount of the lien. The subsequent lien proceedings will consider any technical defenses to the right to a mechanic's lien, then calculate the amount of the lien using the prior arbitration award.").

**46.** 60 S.W.3d 351, 354 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

**47.** 849 S.W.2d 380, 390–391 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

chanic's lien can agree to arbitrate its existence. We agree with their conclusion.

\* \* \*

The validity of CVN's lien claim was within the scope of its arbitration agreement with the Delgados, and the arbitrator's award does not violate public policy. It should be confirmed in its entirety. Accordingly, the judgment of the court of appeals is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

Justice HANKINSON issued a dissenting opinion, in which Justice ENOCH joined.

Justice O'NEILL did not participate in the decision.

Justice HANKINSON dissenting, joined by Justice ENOCH.

I dissent. The Court's opinion in this case ignores the context of the issue presented, the consensus of most jurisdictions on how that issue should be resolved, and the significant effects the opinion will have for every Texas homeowner. The Court's opinion permits individual parties to a dispute to contract away the trial court's statutory authority over the property in a foreclosure proceeding, thereby ignoring the in rem nature of such proceedings and the statutes governing them. Instead of ignoring the Legislature's direction that only a court can order foreclosure of a mechanic's lien, I would hold that while parties may arbitrate their personal liability for a debt, a court must decide the validity of a lien. This holding would preserve the distinction between the two separate remedies of personal judgment on a debt and foreclosure of a mechanic's lien on real property securing that debt. It would also ensure that the entity given the authority by the Legislature to divest people of their property has the concomitant

responsibility to see that all constitutional and statutory requirements are met before foreclosure is ordered, while at the same time maintaining individual parties' ability to resolve their personal liability through arbitration. To more fully explain my view, I offer what I would have written as a majority opinion.

Today we resolve a question of first impression for our Court: whether a trial court presented with a request for judicial foreclosure of a constitutional or statutory mechanic's lien under Texas Property Code § 53.154 is bound by an arbitrator's decision that the lien is valid. Petitioner CVN Group, Inc., filed an application in district court to confirm an arbitration award granting it damages against respondents Enrique and Marjorie Delgado and declaring it to have valid constitutional and statutory mechanic's liens on the Delgados' real property. CVN also sought foreclosure of the liens. Following review of the arbitration record, the trial court rendered judgment reducing the damages and declaring that CVN "has no lien" on the property. The court of appeals reversed and rendered in part and affirmed in part. 47 S.W.3d 157. It held that the trial court erred by reducing the damages, but properly investigated and invalidated the liens. Id. at 166–67. We agree with the court of appeals that the trial court had the authority to vacate that part of the arbitrator's award establishing the liens, but further conclude that the trial court erred by failing to conduct a full evidentiary hearing on the liens' validity. Accordingly, we reverse in part the court of appeals' judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

In 1997, CVN contracted to design and oversee the construction of the Delgados' house. The construction contract contained a broad arbitration clause covering

"[c]laims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof." In 1998, the Delgados requested CVN to stop work. CVN then demanded arbitration for what it considered a material breach of the contract.

At arbitration, the principal dispute was the builder's fee owed to CVN by the Delgados under the various compensation clauses in the construction contract. In addition to requesting arbitration of the Delgados' personal liability for money damages under the contract, CVN also requested the arbitrator to declare that it had valid and enforceable mechanic's liens on the Delgados' property to secure payment for the work and materials it supplied. Following a documents-only arbitration, the arbitrator awarded CVN $110,925.10 against the Delgados and also declared that CVN possessed valid constitutional and statutory mechanic's and materialman's liens on the Delgados' property for the full amount due. Because it was a documents-only arbitration, neither party presented oral testimony and there is no transcript of the arbitration hearing. Neither party requested findings of fact or conclusions of law, and the arbitrator did not explain how he arrived at the damages award or his reasons for determining that a valid lien existed on the Delgados' property.

CVN filed an application in district court to confirm the arbitrator's award of damages against the Delgados and to confirm and foreclose the mechanic's liens. *See* Tex. Civ. Prac. & Rem.Code § 171.087; Tex. Prop.Code § 53.154. The Delgados counterclaimed to vacate or modify the amount of damages awarded. They also claimed that: (1) the arbitrator exceeded his authority by declaring valid mechanic's liens; and (2) the award violated their constitu-

tional rights by granting the liens when there was no evidence that CVN complied with the constitutional and statutory requirements for establishing a mechanic's lien on homestead property. The Delgados therefore sought a declaratory judgment that the liens were void and not subject to foreclosure.

The trial court conducted a hearing on these issues, admitting into evidence only the evidentiary record from the arbitration. Explaining that "both parties had the opportunity to submit all evidence they desired to the Arbitrator for consideration," the trial court issued findings of fact and conclusions of law based solely on the arbitration record. The court found that the arbitrator improperly calculated the damages and reduced the damages to $22,775.10. The court also found that CVN failed to comply with the constitutional and statutory requirements for obtaining a mechanic's lien on the Delgados' homestead. The court further concluded that the arbitrator exceeded his powers by granting the liens and that "the constitution and statutory protection afforded homesteads constitutes a fundamental public policy which allows this Court to vacate/modify/correct an arbitration award which is in violation of such fundamental public policy." Accordingly, the trial court rendered judgment that CVN "has no valid lien" on the Delgados' property.

CVN appealed, arguing that the trial court erred by reducing the damages, by finding that the Delgados had established their property as homestead, and by concluding that the mechanic's liens were invalid and not subject to foreclosure. The court of appeals agreed with CVN that the trial court improperly reduced the damages, which were wholly within the arbitrator's discretion to determine, 47 S.W.3d at 163, and accordingly reversed the trial court's judgment and rendered judgment

confirming the arbitrator's award in this respect, *id.* at 166. The court of appeals affirmed, however, the trial court's determination that the liens were invalid. *Id.* at 167. Relying on Texas Property Code § 53.154, the court of appeals explained that "the power of foreclosure of a mechanic's and materialman's lien lies exclusively with the judiciary" and thus the trial court's investigation into the validity of the mechanic's liens was proper. *Id.* at 165–67.

Before this Court, CVN challenges the trial court's authority to disturb the arbitrator's award of valid mechanic's liens. In addition, CVN argues that even if the trial court had the authority to examine the liens' validity, the trial court erred by relying solely on the arbitration record, rather than conducting a de novo evidentiary hearing on this issue. The Delgados respond that Texas common law allows a court to modify or vacate an arbitration award that violates the constitution or public policy. They urge that the trial court had a statutory duty to examine the validity of the liens before it could order foreclosure, and correctly vacated the liens and declared the liens invalid once it determined that CVN had not established compliance with the requirements for the liens at the arbitration hearing. The Delgados did not petition for review from the court of appeals' decision that the trial court could not modify the arbitrator's damage award.

As a preliminary matter, we note that the court of appeals treated the Delgados' property as their homestead. Although in the court of appeals CVN challenged the trial court's finding that the property is the Delgados' homestead, CVN did not raise this issue before this Court. Accordingly, we treat the property as homestead.

We begin with the standard for reviewing an arbitration award under Texas law.

Texas has long favored arbitration of disputes. *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995); *Brazoria County v. Knutson,* 142 Tex. 172, 176 S.W.2d 740, 743 (1943); *see also* TEX. CIV. PRAC. & REM.CODE § 154.002 (stating that "[i]t is the policy of this state to encourage the peaceable resolution of disputes"). An arbitration award has the effect of a judgment of a court of last resort and is entitled to great deference in a court of law. *City of San Antonio v. McKenzie Constr. Co.,* 136 Tex. 315, 150 S.W.2d 989, 996 (1941); *Bailey & Williams v. Westfall,* 727 S.W.2d 86, 90 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). Every reasonable presumption is indulged to uphold an arbitrator's decision. *City of San Antonio,* 150 S.W.2d at 996; *Johnson v. Korn,* 117 S.W.2d 514, 519 (Tex.Civ.App.-El Paso 1938, writ ref'd).

In keeping with this policy favoring arbitration, a trial court may set aside an arbitration award only in limited circumstances. Absent specific common-law or statutory grounds for vacating, modifying, or correcting an award, the reviewing court must confirm it. *See* TEX. CIV. PRAC. & REM.CODE § 171.087; *L.H. Lacy Co. v. City of Lubbock,* 559 S.W.2d 348, 351–52 (Tex.1977); *House Grain Co. v. Obst,* 659 S.W.2d 903, 906–07 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.). The precise question presented to us in this case is whether the arbitrator exceeded his authority by declaring valid mechanic's liens on the Delgados' homestead.

The court of appeals concluded that because Property Code § 53.154 requires judicial foreclosure of mechanic's liens, the arbitrator exceeded his authority by declaring CVN to have valid constitutional and statutory mechanic's liens, and the trial court acted properly in determining whether CVN complied with the requisites for mechanic's liens. 47 S.W.3d at 165–66.

CVN agrees that the Property Code requires judicial foreclosure of mechanic's liens, but argues that a lien's validity is nonetheless a proper subject of arbitration. Once an arbitrator has declared a valid lien, therefore, a court must order foreclosure, absent a statutory or common-law basis for vacating the award. In support of this argument, CVN notes that the factual disputes regarding its alleged liens, including those relating to the liens' validity, arose out of or related to the construction contract, and thus were covered by the arbitration clause. The Delgados respond that the dispute about the underlying debt that a lien secures and the dispute about the lien's validity are separate and distinct; the former may properly be determined by the arbitrator, but the latter can only be determined by a court. The Delgados also argue that the arbitration award in this case is against public policy because it awarded liens on their homestead in the absence of strict compliance with the constitutional and statutory requirements for establishing a lien on a homestead.

To resolve this question, we review the nature of mechanic's and materialman's liens and the procedures for their enforcement under Texas law. Mechanic's liens did not exist at common law or in equity, but rather are creatures of statute. *Lippencott v. York*, 86 Tex. 276, 24 S.W. 275, 276 (1893); *Pratt v. Tudor*, 14 Tex. 37, 39 (1855). They protect people or entities who have furnished materials or services for the construction of buildings or other improvements to real property. *Strang v. Pray*, 89 Tex. 525, 35 S.W. 1054, 1055 (1896). And they are based on the equitable principle that when a person increases the value of another's land by providing improvements, the improvements should be paid for, and the person making the improvements should, to the extent of the contract price or value of services or mate-

rials provided, have a lien on the land to secure payment. *Lippencott*, 24 S.W. at 276. Unlike mortgages or other contract liens, mechanic's liens arise only by operation of law, never by grant or contract. *Id.; Myers v. Houston*, 88 Tex. 126, 30 S.W. 912, 913 (1895). A mechanic's lien that arises from improvements to a homestead is one of the few types of liens enforceable against homestead property, provided that the lienholder has strictly complied with applicable constitutional and statutory requirements. *See* Tex. Const. art. XVI, § 50(a)(5); Tex. Prop.Code § 53.254; *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex.1992); *Collier v. Valley Bldg. & Loan Ass'n*, 62 S.W.2d 82, 84 (Tex. Comm'n App.1933, holding approved); *Sommers v. Stout*, 44 S.W.2d 901, 902 (Tex. Comm'n App. 1932, holding approved).

There are two sources of protection for mechanics and materialmen in Texas, both of which allow for the enforcement of liens again homestead: (1) article XVI, section 37, of the constitution; and (2) chapter 53 of the Property Code, formerly known as the Hardeman Act. Tex. Const. art. XVI, § 37; Tex. Prop.Code §§ 53.001–.260; *see Hayek v. Western Steel Co.*, 478 S.W.2d 786, 790–91 (Tex.1972). The constitution grants to each contractor who enters into a direct contractual relationship with the real property owner a lien upon the property for materials and labor provided in improving it. Tex. Const. art. XVI, § 37; *Hayek*, 478 S.W.2d at 790. Unlike the statutory lien, the constitutional lien is self-executing; that is, no notice or filing requirements must be met for the lien to attach, and the lien exists independently and apart from any legislative act. *See Strang*, 35 S.W. at 1056; Woodward, *The Constitutional Lien on Chattels in Texas*, 28 Tex. L.Rev. 305, 309 (1950). The constitutional lien is not, however, self-enforcing,

and the constitution further requires the Legislature to provide for the enforcement of mechanic's liens. *Strang*, 35 S.W. at 1056; Woodward, *supra*, at 309.

Pursuant to this constitutional mandate, chapter 53 of the Property Code sets forth the procedure for enforcing mechanic's liens. TEX. PROP.CODE §§ 53.001–.260. In addition, the Property Code grants a statutory lien upon real property to every contractor who furnishes labor or materials to improve property, regardless of whether the contractor has a direct contractual relationship with the property's owner. *Id.* § 53.021. Therefore, unlike the constitution, the statutory lien protects subcontractors as well as original contractors. *See Hayek*, 478 S.W.2d at 790. Because of this difference, the statutory lien has become the primary vehicle for contractor protection. *See* L. Kelly Jones, *Texas Mechanics' and Materialmen's Lien Laws: A Guide Through the Maze*, 48 TEX. B.J. 318, 318 (1985); *see also* Jeffrey A. Leonard & Darren G. Woody, *Texas Mechanic's and Materialman's Liens and the Scope of the Preferential Lien on Removables*, 15 TEX. TECH. L.REV. 673, 675 (1984) (explaining that the utility of the constitutional lien is that it protects the lienholder when a statutory lien may be invalid because of failure to meet the statutory requirements).

But while chapter 53 provides greater protection for contractors, it also sets out a number of specific requirements for perfecting and enforcing mechanic's liens. For example, it provides specific filing and notice requirements and it confirms and supplements the constitutional requirements for perfecting a mechanic's lien on homestead property. *See* TEX. PROP.CODE §§ 53.021–.058, 53.251–.260. The lien statute reflects an attempt to create a workable balance among various and often antagonistic interests, protecting not only contractors and suppliers, but also lenders and property owners. *See Strang*, 35 S.W. at 1056 (explaining that lien statute's notice requirements protect the property owner and subsequent purchasers); 1 ELDON L. YOUNGBLOOD, YOUNGBLOOD ON TEXAS MECHANICS' LIENS, §§ 103.1–.2 (2nd ed.1999) (discussing competing interests protected by this statute and the lengthy history of Texas mechanic's lien statutes).

The Legislature has made plain in Property Code § 53.154 that judicial action is the only means of enforcing a constitutional or statutory mechanic's lien: "A mechanic's lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien." TEX. PROP.CODE § 53.154; *see Exchange Sav. & Loan Ass'n v. Monocrete Pty. Ltd.*, 629 S.W.2d 34, 38 (Tex.1982). This requirement distinguishes mechanic's liens from mortgages and other contract liens, which may be enforced in any manner provided by the contract, including by an agreed power of sale. *Lippencott*, 24 S.W. at 276. Further, in Texas, in many circumstances, property may be foreclosed nonjudicially without filing suit and entry of judgment ordering foreclosure, and without direct court supervision over the foreclosure proceedings. *See* TEX. PROP. CODE §§ 51.001–.005; *see also* Eugene J. Pitman, *Foreclosure Problems*, 30 TEX. B.J. 949, 949 (1967) (explaining that foreclosure through exercise of power of sale in deed of trust is usually so simple that it is often not handled by lawyers). The requirement of judicial foreclosure for mechanic's liens is an exception to this general rule.

The judicial-foreclosure requirement means that a mechanic's lienholder must file a lawsuit against the property owner within the prescribed limitations period in order to preserve its lien rights. *See* TEX. PROP.CODE § 53.158. Once the lienholder

has filed suit, it must prove up the contract and the amount of the debt owed under the contract, the location of the property, the supplying of qualified labor or material, and the perfection of the lien. *See id.* § 53.054 (listing contents of affidavit required to perfect lien); *see also, e.g., First Nat'l Bank v. Sledge,* 653 S.W.2d 283, 286 (Tex.1983) (reviewing whether liens met statutory requirements).

Although the lienholder must establish the amount of the debt subject to the lien when bringing a foreclosure suit, it is not necessary that the foreclosure suit put in issue the personal liability of the debtor. *See Pereira v. Gulf Elec. Co.,* 343 S.W.2d 334, 336 (Tex.Civ.App.-Waco 1960, writ ref'd n.r.e.). In other words, a lienholder need not also secure a personal judgment on the underlying debt before obtaining a judgment of foreclosure against the property involved. *Id.* This is because personal judgment on the debt and foreclosure of the property securing that debt are separate but cumulative remedies under Texas law—while suit on the debt is an "in personam" proceeding against the property owner, foreclosure is an "in rem" proceeding against the property, subjecting the property to payment of the indebtedness secured by the lien. *Gevinson v. Manhattan Constr. Co.,* 449 S.W.2d 458, 465 (Tex. 1969); *McCarson v. Bullock,* 78 S.W.2d 1083, 1090 (Tex.Civ.App.-Galveston 1934, writ ref'd); *see also Garza v. Hammond,* 39 S.W. 610, 611 (Tex.Civ.App.1897, writ ref'd) (holding that though the property is liable, a purchaser of property subject to a mechanic's lien has no personal liability for payment of the mechanic's lien debt, unless expressly assumed); *Lippencott,* 24 S.W. at 276 (explaining that if holder does not sue to enforce lien within limitations period, holder may still enforce debt through personal judgment if debt is still valid). The arbitration award in this case reflects the separate nature of these two

remedies-the arbitrator awarded damages against the Delgados for their personal liability under the contract, and found valid constitutional and statutory mechanic's liens against the homestead property for the full damages award.

As explained above, although property may be foreclosed nonjudicially in Texas in many circumstances, Property Code § 53.154 requires judicial foreclosure of mechanic's liens. *See* Tex. Prop.Code § 53.154. By specifically requiring judicial foreclosure in this context, the Legislature preserved some degree of judicial discretion in enforcing mechanic's liens. *See Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 551 (Tex.1981) ("[T]he legislature is never presumed to do a useless act."). At a minimum, the judicial-foreclosure requirement implies a determination by a court that the constitutional and statutory requirements for perfecting a lien have been met before the court orders foreclosure. *See Lippencott,* 24 S.W. at 277.

While the law regarding the enforcement of mechanic's liens is well established, we find little in Texas law considering whether the validity of a mechanic's lien may be determined in arbitration. The sole Texas case addressing the question concluded that the validity of a lien may be decided by arbitration, although that lien was not on homestead property. *See Dalton Contractors, Inc. v. Bryan Autumn Woods, Ltd.,* 60 S.W.3d 351, 354 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *see also Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.,* 849 S.W.2d 380, 390–91 (Tex.App.-Houston [14th Dist.] 1993, writ denied) (without addressing whether validity of lien may be arbitrated, explaining that if a party prevails in arbitration on the underlying contract claim, the party can then "have the arbitration award confirmed by the court

under the Texas General Arbitration Act, and can sue to foreclose the M & M lien"). The Property Code does not specifically address the issue of whether validity of a mechanic's lien may be determined by an arbitrator (other than to require judicial foreclosure of mechanic's liens, *see* TEX. PROP.CODE § 53.154), and neither does the Texas General Arbitration Act. Mindful of the special protection afforded homestead by our constitution, we must answer the question before us by reconciling the rules governing review of arbitration awards with the requirement of judicial foreclosure for mechanic's liens under Property Code § 53.154. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984) ("Generally, courts are to construe statutes so as to harmonize with other relevant laws if possible.").

Although, as we explained above, we have little Texas law to help resolve this question, the interplay between arbitration and mechanic's lien law in construction disputes has been addressed by other jurisdictions. *See generally* John G. McGill, *Liens and Arbitration,* 13 CONSTR. LAW. 3 (April 1993). Other states have developed specific procedures for harmonizing contractual arbitration with lien litigation. Generally, these states require a mechanic's lien claimant to commence proceedings in two different forums—the arbitration forum and a court of law—to enforce lien rights. *See id.* As our Legislature has directed that the Texas General Arbitration Act "shall be construed to effect its purpose and make uniform the construction of other states' law applicable to an arbitration," TEX. CIV. PRAC. & REM.CODE § 171.003, we review other jurisdictions' approach in more detail.

In New York, for example, when a contractor commences a foreclosure action and the contract provides for arbitration, the defendant can move to stay the fore-closure action and compel arbitration of the amount claimed under the contract. *See A. Burgart, Inc. v. Foster–Lipkins Corp.,* 63 Misc.2d 930, 313 N.Y.S.2d 831, 832 (N.Y.Sup.Ct.1970), *aff'd,* 38 A.D.2d 779, 328 N.Y.S.2d 856, *aff'd,* 30 N.Y.2d 901, 335 N.Y.S.2d 562, 287 N.E.2d 269 (1972); *May v. New Amsterdam Cas. Co.,* 270 A.D. 472, 60 N.Y.S.2d 613, 614 (1946). If an arbitration award is handed down and enforcement of that award is necessary, the contractor moves to vacate the stay in court and proceeds against the defendant to enforce the lien. *See May,* 60 N.Y.S.2d at 615. The court then uses the amount of the award as the basis of the lien. *Id.*

Maryland takes a somewhat different approach, but with the same effect as New York's. After a party has filed a petition to establish a mechanic's lien, Maryland requires the court to make a preliminary determination of whether a lien should attach. *See Caretti, Inc. v. Colonnade L.P.,* 104 Md.App. 131, 655 A.2d 64, 66 (1995). Following a hearing or based on affidavits, the judge determines whether there is probable cause for instituting a lien. *Id.* Upon a finding of probable cause, an interlocutory lien is established on the property and proceedings are stayed pending arbitration under the arbitration clause of the contract. *Id.* Following arbitration, the parties return to court with the arbitration results for the court to take final action on the lien on the basis of the arbitration award. *See Frederick Contractors, Inc. v. Bel Pre Med. Ctr., Inc.,* 274 Md. 307, 334 A.2d 526, 531 (1975).

Other states have taken similar approaches to New York and Maryland, requiring judicial enforcement of a lien, but permitting arbitration of the amount owed that is the basis for the lien. *See Kaneko Ford Design v. Citipark, Inc.,* 202 Cal. App.3d 1220, 249 Cal.Rptr. 544, 547 (1988); *Mountain Plains Constructors, Inc. v.*

*Torrez,* 785 P.2d 928, 931 (Colo.1990); *Mills v. Robert W. Gottfried, Inc.,* 272 So.2d 837, 838 (Fla.Dist.Ct.App.1973); *H.R.H. Prince Ltc. Faisal M. Saud v. Batson–Cook Co.,* 161 Ga.App. 219, 291 S.E.2d 249, 251 (1982); *J & K Cement Constr., Inc. v. Montalbano Builders, Inc.,* 119 Ill.App.3d 663, 75 Ill.Dec. 68, 456 N.E.2d 889, 903 (1983); *Buckminster v. Acadia Vill. Resort, Inc.,* 565 A.2d 313, 315 (Me.1989); *Lane–Tahoe, Inc. v. Kindred Constr. Co.,* 91 Nev. 385, 536 P.2d 491, 495 (1975); *Pine Gravel, Inc. v. Cianchette,* 128 N.H. 460, 514 A.2d 1282, 1285 (1986); *Thomas Group, Inc. v. Wharton Senior Citizen Hous. Inc.,* 163 N.J. 507, 750 A.2d 743, 751 (2000); *Harris v. Dyer,* 50 Or. App. 223, 623 P.2d 662 (1981), *aff'd as modified,* 292 Or. 233, 637 P.2d 918 (1981). Whatever the approach of a given state, the crux of the coordinate proceedings is that the court defers to arbitration on the underlying debt claim, but retains jurisdiction over the dispute, and later incorporates the amount of the arbitration award into its order of foreclosure. *See, e.g., Mills,* 272 So.2d at 838–39; *Harris,* 623 P.2d at 665.

Some of these jurisdictions have addressed whether the validity of a mechanic's lien is for the court or the arbitrator to decide, typically in the context of whether a party has waived the right to proceed in court by first submitting the debt to arbitration. The seminal case in this area is *Brescia Construction Co. v. Walart Construction Co.,* 264 N.Y. 260, 190 N.E. 484 (1934). In *Brescia,* the plaintiff brought an action to foreclose its mechanic's lien against a company with whom it entered into a construction agreement and a surety that had undertaken the responsibility for the lien. *Id.* at 485. Similar to this case, the contract between the parties contained a broad arbitration provision stating that all questions that may arise under the contract and in the performance of work

under that contract shall be submitted to arbitration. *Id.* The parties submitted the dispute to arbitration, and the arbitrator awarded damages in favor of the plaintiff. *Id.* The appellate division reversed the judgment affirming the arbitrator's award against the surety. *See id.*

At issue on appeal was the propriety of judgment against the surety, which would have allowed for foreclosure of the mechanic's lien. In addressing that issue, the New York Court of Appeals clarified the coordinate nature of arbitration proceedings and lien litigation, explaining that a personal judgment on a breach-of-contract claim that is subject to arbitration is separate and distinct from judgment to enforce a statutory lien arising from that contract:

> When [the amount due to the lienor under its contract] has been determined and an award made, a personal judgment may be entered for that amount against the other party to the contract. The right to enforce a lien for such amount upon the land is created by the statute, and the statute makes no provision for resort to arbitration for the enforcement of such a lien. . . . [T]he scope of the arbitration is confined to the determination of those questions which the parties have agreed to submit to arbitration. It is defined by the terms of the contract and the order of the court made pursuant to the statute. An award may be made only against the parties who have agreed to abide by the award, and can result only in a personal judgment and not in a judgment to enforce a statutory lien.

*Id.* at 485.

The court further explained that because the parties agreed in the construction agreement to arbitrate disputes arising under the contract, the surety could not object to arbitration of the amount of debt

due the plaintiff under the contract. *Id.* at 486. However, the surety's appearance at the arbitration did not constitute "consent that the scope of the arbitration proceedings should be enlarged" to include issues raised in the foreclosure action, or that a personal judgment might be entered against the surety without a judgment that the amount due was chargeable against the property. *Id.* Accordingly, the court concluded that the award was conclusive as to the amount due the plaintiff, but did not bind the surety in the absence of adjudication on the lien issues:

> At most, the award constitutes an adjudication of the amount due to the plaintiff. Even though conclusive on the point, there can be no judgment against the surety without an adjudication that this amount is chargeable against the property by virtue of the notice of lien. "A valid lien on the primary fund must be established to require payment pursuant to the terms of the undertaking."

*Id.* (quoting *Berger Mfg. Co. v. City of New York*, 206 N.Y. 24, 99 N.E. 153, 154 (1912).) Thus the limited arbitration on the amount due the plaintiff was "merely a step in enforcing the plaintiff's remedies." *Id.* at 487.

Following *Brescia*, New York courts addressing the issue have consistently held that the validity of a mechanic's lien is a matter "beyond the power of the arbitrators to determine." *May*, 60 N.Y.S.2d at 614–15. Consequently, while any award made by the arbitrator is conclusive as to the value of labor and materials provided, it is not conclusive as to the validity of a mechanic's lien or as to whether the amount found due is chargeable against a surety who has bonded the lien. *See id.; RRN Assocs. v. Aetna Cas. & Sur. Co.*, 263 A.D.2d 501, 694 N.Y.S.2d 677, 678 (N.Y.App.Div.1999) (mem.); *Mancini v. Stern*, 28 Misc.2d 77, 210 N.Y.S.2d 329, 331 (N.Y.Sup.Ct.1960); *Cincrete Corp. v. Sansouci Realty Corp.*, 7 Misc.2d 717, 168 N.Y.S.2d 973, 974 (N.Y.Sup.Ct.1957).

Similar to New York, other jurisdictions that employ coordinated proceedings separate the personal obligation to arbitrate a dispute on a debt from the right to enforce a mechanic's lien securing that debt. *See Buckminster*, 565 A.2d at 315 (rejecting contention that arbitration clause waives lienholder's statutory right to mechanic's lien and requires lienholder to proceed only through arbitration); *Pine Gravel*, 514 A.2d at 1285 (explaining that agreement to arbitrate refers to method of resolving the dispute, while lien serves as security to enforce any judgment or award); *Harris*, 623 P.2d at 665 (noting the "significant differences between the right to secure payment of amounts claimed and the obligation to resolve any dispute as to the amounts claimed in a particular manner"). These jurisdictions place the determination of a lien's validity and other lien enforcement issues with the court, not the arbitrator. *See B & M Constr., Inc. v. Mueller*, 164 Ariz. 52, 790 P.2d 750, 752 (Ct.App.1989) (explaining that because construction litigation often involves many lien claimants who contest not only whether a lien has been properly perfected but which liens have priority, these claimants would not be parties to the contract requiring arbitration or bound by the resulting arbitration); *Mills*, 272 So.2d at 839 (explaining that contemporaneously with reviewing an arbitration award on the debt, "the court may adjudicate the right of the plaintiff to a mechanic's lien for the purpose of enforcing such judgment as plaintiff may obtain"); *Sorg v. Crandall*, 233 Ill. 79, 84 N.E. 181, 189 (1908) (noting that because the remedy of enforcing a statutory mechanic's lien is cumulative of judgment on the contract claim, it is not affected by the submission of a claim to arbitration, except as to the amount to be

collected by its enforcement); *Buckminster*, 565 A.2d at 315 (following *Mills*); *Pine Gravel*, 514 A.2d at 1285; *Harris*, 623 P.2d at 665; *see also* Lifschitz & Wax, MECHANICS' LIENS EDITION II, CONSTRUCTION BRIEFINGS, (Nov.2000) (stating that arbitrator is generally not in position to find that procedural requirements for mechanic's liens have been met); McGill, *supra*, at 4 (instructing litigants that lien proceedings following arbitration establishing the amount of the lien will consider any technical defenses to the right to a mechanic's lien, then calculate the amount of the lien using the arbitration award).

The jurisdictions that have addressed the question of whether the validity of a mechanic's lien is for the court or an arbitrator to decide have done so in light of the same competing policies as those at issue in this case. Similar to Texas, these jurisdictions favor the arbitration of disputes and uphold arbitration awards unless special circumstances exist. *See Florida Select Ins. Co. v. Keelean*, 727 So.2d 1131, 1132 (Fla.Dist.Ct.App.1999), *disapproved of in part on other grounds by Johnson v. Nationwide Mut. Ins. Co.*, 828 So.2d 1021 (Fla.2002); *Matter of Silverman*, 61 N.Y.2d 299, 473 N.Y.S.2d 774, 461 N.E.2d 1261, 1265–66 (1984). And, like the Texas Property Code, these states' mechanic's lien statutes require that actions be filed in a court of law within specified limitation periods in order to preserve and enforce the lien. *See, e.g., Buckminster*, 565 A.2d at 314–15; *In re Oxer*, 36 Misc.2d 314, 233 N.Y.S.2d 697, 699 (N.Y.Sup.Ct.1962); *Harris*, 623 P.2d at 665.

In accord with the jurisdictions that have addressed the issue, we hold that while parties may agree to arbitrate a dispute on a debt arising from the parties' contract, the validity of a mechanic's lien securing that debt is for a court, not an arbitrator, to decide. This holding comports with the nature and enforcement of mechanic's liens under well-established Texas law, gives meaning to both the Property Code and the General Arbitration Act, and preserves the well-established distinction between the remedies of personal judgment on a debt and foreclosure of a mechanic's lien on real property securing that debt. *See McCarson v. Bullock*, 78 S.W.2d 1083, 1090 (Tex.Civ.App.-Galveston 1934, writ ref'd); *Taylor v. Rigby*, 574 S.W.2d 833, 839 (Tex.Civ.App.-Tyler 1978, writ ref'd n.r.e.). If we were to accept CVN's argument that the arbitrator has the authority to determine the validity of a mechanic's lien, then all that would be left for the court to do following arbitration would be to perform the ministerial act of signing a foreclosure order. Such a result would eliminate the judicial function established by Property Code § 53.154, which requires judicial foreclosure of mechanic's liens. *See City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex.1995) ("We will not read statutory language to be pointless if it is reasonably susceptible of another construction."). Moreover, requiring a court to ensure compliance with the statutory requisites not only comports with the comprehensive scheme governing mechanic's liens in the Property Code, but also furthers this state's well-established policy of protecting the homestead. TEX. GOV'T.CODE § 311.023(1) (in construing a statute, court may consider object sought to be obtained); *Citizens Bank of Bryan v. First State Bank*, 580 S.W.2d 344, 348 (Tex.1979) ("The cardinal rule in statutory interpretation and construction is to seek out the legislative intent from a general view of the enactment as a whole ...."); *see Collier*, 62 S.W.2d at 84 ("The Constitution and statutes zealously guard the rights of a homestead, and a materialman's and mechanic's lien thereon can be acquired only by a strict compliance with the provisions thereof."). Accordingly, placing

the determination of a lien's validity into the hands of the court, but allowing the parties to arbitrate the dispute on the debt, gives meaning to the policies underlying the relevant provisions of both the Property Code and the Arbitration Act. We disapprove of *Dalton Contractors, Inc. v. Bryan Autumn Woods, Ltd.*, 60 S.W.3d 351, 354 (Tex.App.-Houston [1st Dist.] 2001, no pet.), to the extent it holds otherwise.

Finally, because we hold that the validity of a mechanic's lien may not be determined by an arbitrator but must be determined by a court before it may order foreclosure, we further hold that the trial court must determine the issue based on a full evidentiary record. The foreclosure action should proceed under our rules of civil procedure as would any other action, even if as part of the same lawsuit a trial court confirms an arbitration award of damages based on the personal liability of the debtors. The trial court here thus erred by limiting its review to the arbitration record, and the parties must be provided with the opportunity to participate in a full evidentiary hearing before the court rules on the liens' validity and orders foreclosure if it determines the liens to be valid.

Thus, in this case, the arbitrator awarded damages for CVN against the Delgados based on their personal liability for breach of contract. The arbitrator further found CVN to possess valid constitutional and statutory mechanic's liens for the award. On CVN's petition for confirmation of the award and to foreclose the liens, the trial court then had the duty to confirm the award absent a basis to vacate, modify, or correct the damages awarded against the Delgados, and had the statutory duty to rule on the validity of the liens and order foreclosure if it determined the liens to be valid. *See* TEX. PROP.CODE § 53.154. Be-

cause we hold that the validity of a mechanic's lien is for a court, not an arbitrator, to determine, the arbitrator exceeded his authority in this case by declaring that CVN possessed valid statutory and constitutional mechanic's liens, and the trial court properly vacated that part of the award. *See* TEX. CIV. PRAC. & REM.CODE § 171.088(a)(3)(A). However, we further conclude that the trial court erred by basing its determination of the liens' validity solely on review of the arbitration record, and on remand must conduct a full evidentiary hearing on the issue. We therefore reverse in part the court of appeals' judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

For the reasons expressed above, I cannot join the Court's opinion, and I respectfully dissent.